# CHARLESTON.

Pardee & Curtin Lumber Co. *v.* L. P. B. Rose *et al.*

Submitted January 18, 1921. Decided January 25, 1921.

1.    Taxation—*Taxpayer Claiming Discrimination Must Pursue Statutory Remedy for Proper Assessment.*

> A taxpayer who claims that his lands have been assessed for taxation by the assessor at more than the true and actual value thereof, and that his lands are assessed at a higher value than other lands in the county of practically the same value, and similarly situated, thus causing unequal taxation and discrimination against him, must pursue the statutory remedy given him in secs. 18 and 129 of chap. 29 of the Code, in order that the lands may be properly assessed. (p. 488.)

2.    Same—*Taxpayer's Failure to Apply to Board of Equalization Precludes Enjoining of Wrongful Assessment.*

> Failure of a taxpayer, who claims that his lands have been so assessed, to apply to the board of equalization for a correc-

tion of the alleged wrongful assessment, and if denied relief by that board, then by appeal to the circuit court, in the manner prescribed by sections 18 and 129 of chap. 29, Code 1913, even though fraud is charged against the assessor and the board in making the assessment of his lands, will preclude said taxpayer from enjoining the alleged wrongful assessment.  (p. 492).

3.  PLEADING—*Facts Constituting Fraud Must be Stated.*

Fraud is a conclusion of law, and the facts relied on to show it must be stated, and must when taken together, be sufficient to make out a case of fraud.  Fraud is never presumed, it must be particularly alleged, especially when the act charged as a fraud may be innocent.  In pleading a fraud, the pleader must by apt words allege in his pleading every act, fact and intent which necessarily enter into, and constitute that particular fraud; and these essentials must be alleged with such precision and certainty as to exclude every construction, except the fraudulent and wrongful purpose complained of; and if, from the face of the pleading, it is doubtful whether the allegations do in fact amount to that particular fraud or not, it is not well pleaded. (p. (493).

Appeal from Circuit Court, Webster County.

Suit by the Pardee & Curtin Lumber Company against L. P. B. Rose and others to restrain extension of tax levies.  Injunction dissolved, and plaintiff appeals.

*Affirmed.*

*Haymond & Fox,* for appellant.
*Jno. T. Simms,* for appellees.

LIVELY, JUDGE:

The plaintiff, Pardee & Curtin Lumber Co., presented its bill to the Circuit Court of Webster County on August 6, 1920, praying for an injunction against L. P. B. Rose, W. E. Gardner and T. W. Cain, members of the board of review and equalization, P. J. McGuire, clerk of said board, and H. F. Given, assessor, to restrain them from extending levies for taxation on its lands in that county.  An injunction was granted as prayed for, the defendants interposed a demurrer to the bill and moved to dissolve the injunction, which demurrer was sustained and motion to dissolve granted on the 26th of No-

vember, 1920, and the plaintiff, not asking or desiring to amend its bill, obtained an appeal and supersedeas.

The material allegations of the bill are that plaintiffs owned in fee two tracts of land in Fork Lick District, the one containing 23,244 acres and the other 5,685 acres, the true and actual value of which is $30.00 per acre, but that the assessor assessed the 23,244 acre tract at $45.00 per acre and the 5,685 acre tract at $35.00 per acre, and the board of review and equalization assessed the larger tract at $45.00 per acre and the smaller at $31.00 per acre for tax purposes for the year 1920. It is further alleged that for the last four years these lands have been taxed in excess of their true and actual value and that there has been a gradual increase in the assessments for these years. It is charged upon information that the assessor for the year 1920 fixed a value of $5.00 per acre on these lands in excess of what he estimated would be the final assessment thereof, with the view of decreasing the assessment if complaint was made, and that the board of review and equalization had knowledge of this action on the part of the assessor when it met for the purpose of equalizing the tax assessments for 1920. The plaintiff appeared before the board at its regular session and sought relief from the excessive assessments, but it is alleged that the attitude of the board, as expressed through its president, was that no change would be made in the assessment even if evidence was introduced. The import of its position in that regard is shown by the following words or words to like effect, alleged to have been used by the president of the board, "Come on with your evidence. We are not afraid of your evidence." The plaintiff and counsel then deemed it useless to introduce evidence before the board, and did not offer or attempt to introduce evidence to procure a change in the valuation, and for that reason did not pursue the remedy provided by sec. 129 of ch. 29 of the Code. The bill further alleged that the plaintiff was without adequate remedy at law to obtain the proper assessment and correct the alleged illegal and excessive assessment. The bill further alleges that the lands were chiefly valuable for the standing timber thereon and that no effort had been made by the assessing officers of

Webster County to ascertain the amount or value of the stand-
ing timber on its lands; and further, that the assessment made
in 1920 was at a much greater sum, compared with their true
and actual value than were all the other lands which were
assessed with taxes in that county; and that the assessment so
made is in violation of sec. 1, Art. 10 of the Constitution,
which says: "Taxation shall be equal and uniform throughout
the State and all property, both real and personal shall be
taxed in proportion to its value, to be ascertained as directed
by law." The bill alleges that the assessment made by the
assessor and concurred in by the board was illegal, fraudulent
and void and by reason of the intimation from the board that
evidence before it would be ineffective, an appeal to the circuit
court would be an inadequate remedy and unavailing.

Section 18, ch. 29, Code 1918, provides for the meeting of
the board of equalization at the court house not later than the
5th day of July, for the purpose of reviewing and equalizing
the assessments made by the assessor, at which time the board
is required to do all things to the end that all property shall
be assessed at its true and actual value and entered upon the
books accordingly; and if any property or interest is assessed
at more or less than its true and actual value, it is required to
increase or reduce the value, fixing it at its true and actual
value. Notice must be given by publication of the time, place
and purpose of the meeting and "if any person fail to apply for
relief at said meeting he shall be deemed to have waived his
right to ask for correction in his assessment list for the current
year, and shall not thereafter be permitted to question the cor-
rectness of his lists as finally fixed by said board."

Section 129 of said chapter provides that if any person who
claims to be aggrieved by any assessment, and who shall have
appeared and contested the same as provided in section 18,
may, within 30 days after the adjournment of the board, apply
for relief to the circuit court of the county, after giving ten
days notice to the prosecuting attorney, and the applicant
desiring an appeal from the decision of the board shall have
the evidence taken at the hearing certified by the board, and
the appeal when allowed by the court or judge in vacation

shall have precedence over all other cases pending in the circuit court, and the appeal shall be determined from the evidence so certified; and if upon the hearing of the appeal it is determined that any property has been assessed for more or less than its true and actual value, the court shall by proper order correct the assessment, fixing such property at its true and actual value. If upon such appeal it is shown that the assessment has been too high and that the owner has paid the assessed tax, it shall be refunded to him, and if not paid he shall be relieved from the payment thereof. These are the material things to be done and shown in this statutory method for correcting assessments and for the purpose of having property assessed at its true and actual value. The question here is whether this statutory remedy must be invoked by the plaintiff or whether it can select a remedy by injunctive process in a court of equity. The decision rests upon whether or not there is an adequate, complete and plain remedy at law. The courts and text writers almost uniformly hold that when a statute provides a remedy against excessive, erroneous or improper assessments before some officer or board appointed or elected for that purpose, the party aggrieved must at his peril avail himself of this remedy and cannot resort to the courts in the first instance; and if he neglects to avail himself of the statutory remedy provided, he cannot assail the assessment in a collateral proceeding nor invoke the equitable powers of the courts for redress. *West Va. National Bank* v. *Spencer,* 71 W. Va. 678. Cooley on Taxation (2nd Ed.) Vol. 2, p. 1379.; 37 Cyc. p. 1079. Where the defect in the assessment is jurisdictional the property owner does not lose his rights by failing to appear before a board, or a court sitting as a ministerial officer for remedial action. But in the case of *Copp et al.* v. *State of W. Va.* 69 W. Va. 439, this court held that the party aggrieved has the right to appear before the board and have his assessment corrected in the manner provided by sec. 18 of chap. 29 and if the board refuses, then to take his appeal to the circuit court as provided in sec. 129 of said chapter, and if the question turns upon the liability or the non-liability of the subject to taxation, the judgment is subject to review upon writ of error to this court, when the

taxes amount to $100.00 or more on the property under question. Even where the question is that of liability or non-liability, a jurisdictional question, it may be proper for the party aggrieved to follow the statutory procedure in order to be relieved. The case of the *West Virginia National Bank* v. *Spencer, supra,* holds in effect that the statutory remedy provided for in ch. 29 of the Code is the exclusive method of relieving property from illegal assessments. It seems to hold that the person aggrieved must apply for relief to the board, for correction of the assessment on whatever ground of complaint he may have, and if he does so apply, and in that proceeding fails, the adjudication bars resort to equity. A distinction must be made in cases where the taxing authority acts ultra vires by taxing property non-taxable, or levies a tax beyond the limit fixed by the Constitution, in which cases equity will interfere whenever the tax is assessed and laid. *Christie* v. *Malden,* 23 W. Va. 667; *Turkey Knob Coal Co.* v. *Hallanan,* 84 W. Va. 401, 99 S. E. 849. The case at bar is not within this class. No jurisdictional question is raised. The plaintiff has not exhausted its remedy at law; it is true that the bill alleges an appearance before the board of equalization and review for the purpose of seeking a correction in the assessment, but plaintiff abandoned the remedy when it concluded that the board was hostile to it. It stopped at the half-way house and turned back. It cannot be conclusively presumed that strong and convincing evidence, produced before the board would not have changed its apparently preconceived conclusions. There are many instances where eminent jurists have been obliged by better information or fuller consideration to change their opinions on very important subjects, which they once thought right, but found to be otherwise. But whether or not evidence would have attained the desired result before that board, it cannot be presumed at all, nor is it alleged in the bill that upon appeal to the circuit court, the judge thereof would have taken the same attitude charged against the board, and reached the same result as that reached by the assessor and board. There is no bias, prejudice, fraud or preconceived adverse judgment imputed to the judge of the circuit court. On appeal he

decides upon the same evidence which is taken before the board. In this particular case it is not perceived why this judge should be appealed to in an equity proceeding for injunctive relief, when the same judge could have been speedily appealed to in the manner set out by statute. If he was biased or prejudiced in the one proceeding he would likely be· so in the other. It is presumed that a public officer will do his duty, and this presumption would apply with equal force to the board of review and equalization as it would apply to the judge of the circuit court. "It will be presumed that a public officer will do his duty until the contrary, is shown and that he will execute the duties of his office with diligence and fidelity." *Mines Co.* v. *Thompson,* 93· Va. 293; Mechem's Public Offices and Officers, sec. 579; *Commonwealth* v. *Callaghan,* 2 Va. Cases 460. "The presumption is that no official person, acting under oath of office, will do aught which it is against his official duty to do, or will omit to do aught which his official duty requires should be done." Throop on Public Officers, sec. 558.

The appeal to the circuit court from the board of equalization provided in sec. 129, ch. 29, Code 1918, is speedy, adequate and efficacious. "Such appeal when allowed by the court or judge in vacation shall have precedence over all other cases pending in such court." It is more speedy of determination than the slower process by injunction. It is the policy of the State that the public revenues should be speedily assessed and collected in order that the government may function. The public revenues are the life blood of the body corporate, and the courts are slow to enjoin· the assessment and collection of taxes unless a clear case is made, and equity will not ordinarily assume jurisdiction where there is an over-valuation.

But plaintiff claims that the assessment was made fraudulently by the assessor and board of review and equalization and that the lands were fraudulently assessed at more than their value and at more than other lands of like character and same value in the county, and that the only remedy by which to avoid the excessive and unequal assessment brought about by fraud is an appeal to a court of equity, and counsel relies on the principle laid down on pages 1459 and 1460 of the 3rd edition

of Cooley on Taxation and the authorities there cited. It is there stated that equity will relieve if the assessor purposely made the assessment too high through prejudice or a reckless disregard of duty in opposition to what must necessarily be the judgment of all competent persons, or through the adoption of a rule which is designed to operate unequally upon a class and to violate the constitutional rule of uniformity. Equity will relieve in any case in which a tax is rendered unequal or unfair by fraudulent or reckless conduct of officers or in which a party is deprived by like practices of important rights which the law secures to him, such as the right of appeal from assessment, or to be heard by the board of review before his assessment should be raised. The cases cited by counsel to sustain the points above set out are *Andrews* v. *King Co.,* 22 Am St. Reports 136; and the case of *Taylor et al.* v. *Louisville and N. R. Co.,* 88 Fed. 350, and the various cases therein reviewed. The Andrews case, supra, was where there was an assessment by the assessor, who uniformly and persistently intending to injure and oppress all persons holding mortgages in the county, the plaintiff being one, and intending to relieve persons owning lands and other properties in the county of their just burden in maintaining the public revenue, assessed the mortgages at par value without any regard to the valuation placed by him on the lands mortgaged, and at the same time refused to assess the lands in the county at more than one fifth of their cash value, and he thereby fraudulently brought about unfair and unequal taxation in violation of the state constitution. An inspection of the case will show that there was no appeal from the action of the assessor to a board of equalization or other authority. The case of *Taylor et al* v. *Louisville & N. R. Co., supra,* was one in which complaint was made of an irregularity arising over assessments for taxes made on railroad property by a board of assessors created for that purpose and the assessment of all other property by assessing officers, it being charged that the railroad property was assessed at its full value while other property was habitually and intentionally assessed by the assessors at not exceeding 75 percent of its real or correct value, thus bringing about a discrimination against the railroad prop-

erty by unequal taxation. .It will be observed that the act of the legislature of Tennessee of 1897, which created the board for the purpose of assessing railroad property, did not place any duty on the board to equalize the taxable value of real estate with that of railroad property. Nor was there any administrative board or person charged with the duty of making an equalization of all properties in the state. In these cases and the other cases reviewed by Judge Taft in the Taylor case, it appears that there were no statutory methods by which unjust and fraudulent assessments and taxation could be corrected. These cases can be distinguished from the case at bar, where there is a plain, adequate and speedy relief given by the statute by way of appeal. Both the Andrews case and the Taylor case follow the principles announced by the Supreme Court of the United States in the case of *Cummings* v. *National Bank,* 101 U. S. 153, which is a leading case on the principles announced. In that case the Merchants National Bank of Toledo filed its bill in equity to enjoin the collection of a tax wrongfully assessed against its stockholders, alleging that in the valuation of the shares of stock they were estimated at a much larger sum in proportion to their real value than other property in the same city, county and state. The statute of Ohio, under which this decision was rendered, expressly provided for an injunction against the collecton of a tax illegally assessed, such as that complained of. But the court did not base its jurisdiction wholly on the statute. The rule of assessments adopted and pursued by the different assessing officers, there being different boards and persons for assessing different classes of property, and no final board of equalization, resulted in unequal taxation, and the court took equity jurisdiction because the discriminatory rule was not applied solely to one individual but to a large class of persons and corporations, and because in that particular case a multiplicity of suits was avoided. Chief Justice White dissented. It may be that when the statutory method for correcting assessments and equalizing them has been exhausted in instances where no jurisdictional questions arise, and when it is apparent that fraud in fact, or fraud presumed by law has been perpetrated by the assessing officers and which fraud

87 W. Va.

is alleged and fully proven, that a court of equity would give relief. But that is not a question passed upon here and is not necessary to a decision of this case. This plaintiff has not exhausted its legal remedy and is not entitled, under the showing of its bill, to a hearing in equity.

It is the theory and intent of the assessment laws of this state, and especially those contained in chapter 29 of the Code, that the assessor and board of equalization should be careful to make no discrimination in assessments of lands or other property similarly situated. Unfortunately this is not always done and differences in values of adjoining lands and properties of the same class and similarly situated, as assessed, are so unproportional and unjust as to call for condemnation. Perfect equalization and taxation is not expected. Mere inaccuracies or mistakes or differences in judgments upon values will necessarily occur, but often the differences in valuation are so great as to shock the conscience, and the assessing officers should exercise their functions with painstaking judgment. An administrative looseness in this regard has grown up which cannot be too strongly condemned.

In pleading fraud it is a well established rule that every act, fact and intent which necessarily entered into it must be plainly and specifically set out with such certainty and precision as to exclude every other construction. It cannot be inferentially pleaded. *Loomis* v. *Jackson*, 6 W. Va. 613; *Dickinson* v. *Bankers Loan & Inv. Co.*, 93 Va. 498. It is questionable whether fraud has been sufficiently pleaded in the bill in this case, but that is a question which is not necessary to be determined.

For the reasons herein stated, we affirm the decree of the lower court sustaining the demurrer and dissolving the injunction.

*Affirmed.*