# CHARLESTON.

*In re* Masonic Temple Society.

Submitted February 21, 1922. Decided March 7, 1922.

1. Taxation—*Boards of Equalization and Review—Jurisdiction of Circuit Court to Review Question of Taxability of Assessed Property.*

   The circuit court by section 129, chapter 29 of the Code, has jurisdiction upon appeal to review and correct the rulings and orders of the board of equalization and review, not only upon the question of valuation, but upon the question of the taxability of the property assessed. (p. 443).

2. Same—*Appeal to Circuit Court Proper Remedy to Review Action of Board of Review and Equalization.*

   Neither the repealing clause of chapter 50, Acts 1911, nor the provisions of section 132a thereby added to said chapter 29 of the Code, specifically or by implication repealed or took away the jurisdiction of the circuit court to review the orders or rulings of the board of equalization and review conferred by said section 129 of chapter 29 of the Code, as theretofore interpreted by this court. The remedy by application to the county court given by said section 132a is not an exclusive but a cumulative remedy, and is not inconsistent with the remedy by appeal, given by said section 129. (p. 444).

3. Same—*Equity Has no Jurisdiction to Correct Voidable Assessment.*

   These statutory remedies being complete and ample, equity has no jurisdiction to correct a voidable assessment of property for taxation. (p. 445).

4. Same—*Board of Review and Equalization—Review of Orders —Procedure.*

   The circuit court is not deprived of jurisdiction to review and correct the orders and rulings of the board of equalization and review on the question of the taxability of property

90 W. Va.

because such board has certified the facts proven instead of the evidence of the witnesses, when no objection or exception to that form of certifying the evidence was interposed.   (p. 445).

5.   SAME—*Exceptions from—Masonic Lodges When Not Held and Leased out for Profit.*

Lodges and orders  of Free and Accepted  Masons are charitable and benevolent bodies, and their property, when used solely for charitable and benevolent purposes and not held or leased out for profit, is by the laws of this State exempt from taxation, and if erroneously assessed, such assessment may be avoided by the aggrieved order or corporation holding such property, by the proceedings provided by statute.   (p. 448).

6.   SAME—*Charitable and Benevolent Orders—Law Governing Taxation of Fraternal Benefit Societies not Applicable.*

The provisions of section 30 of chapter 55A of the Code, which exempts the funds of fraternal benefit societies but not their real estate and office equipment, has no application to the property of charitable and benevolent orders held and used exclusively for charitable and benevolent purposes. That statute applies solely to fraternal orders with insurance and other benefit features connected therewith.   (p. 451).

Error to Circuit Court, Wood County.

Action by Masonic Temple Society, on appeal from action of Board of Equalization and Review of Wood County. Decree for plaintiff, and State of West Virginia brings error.

*Affirmed.*

*John T. Simms, C. N. Matheny* and *R. B. McDougal,* for plaintiff in error.

*H. D. Mathews* and *Ambler, McCluer & Ambler,* for defendant in error.

MILLER, JUDGE:

This is an appeal by the State from a judgment or order of the Circuit Court of Wood County pronounced on December 10, 1921, which set aside and annulled the action of the board of equalization and review of said county in placing the property of the Masonic Temple Society in the City of Parkers-

burg upon the land books of said county for taxation for the year 1921, and further adjudged that said society and its said property are not liable to assessment for taxation, and that it be exonerated from the payment of said taxes, and that if the taxes assessed had already been paid to the sheriff, he was thereby ordered to refund the same.

The first point of error is that neither the board of equilization and review nor the circuit court on appeal is given jurisdiction to determine the question of the taxability of property assessed for taxation, and that the State's motion in the circuit court to dismiss the appeal of the temple society should have prevailed. The contention of the State is that by section 132a of chapter 29 of the Code, a new section added to that chapter by chapter 50 of the Acts of 1911, sole original jurisdiction to determine the question of taxability of property was thereby conferred upon the county court, this notwithstanding two prior decisions here, namely, *Copp* v. *State,* 69 W. Va. 439, and *West Virginia National Bank* v. *Spencer,* 71 W. Va. 678, held that section 129 of said chapter 29, construed in connection with section 18 of the same chapter, gave the taxpayer an appeal from the decision of the board of equalization and review as well on the question of the taxability as on the subject of the valuation of his property. We had this exact question before us in the recent case of *State ex rel. Hallanan* v. *Woods, Judge,* decided at the present term and now pending on the petition of the State for rehearing. We have considered that petition in connection with the arguments and briefs of counsel in the present case and have found no good reason for departing from the views expressed in the opinion in that case. The reasons given for the conclusion reached in that case, we believe to be sound. Moreover, the Legislature, since the two decisions referred to, has twice dealt, not comprehensively it is true, but with certain sections of said chapter 29, first in chapter 27 Acts 1919, and lastly in chapter 152 Acts 1921, and amended and reenacted certain of the sections thereof, but in neither act did the lawmakers disturb sections 129 or 18 construed in those decisions, unless as contended they were

modified or repealed by implication by chapter 50 Acts 1911. That this construction of the different sections of the same statute results in giving two concurrent remedies, is unimportant. Good reasons we perceive are given in the opinion in *State ex rel. Hallanan* v. *Woods, Judge, supra*, for both remedies, and we need only refer to the opinion in that case for those reasons.

Nor do we think, as is urged on behalf of the State, that the repealing clause of the act of 1911, repealing all acts and parts of acts inconsistent therewith, was intended to repeal said sections 18 and 129, as construed in our prior decisions. The new section does not say that the county court shall have sole jurisdiction of cases involving the taxability of property, nor are sections 129 and 18 as construed inconsistent with the provisions of the added section. As we construed those sections, they gave a remedy; the new section does but give another. What is there in the prior sections that may be regarded as inconsistent with the new? That a remedy is given which may be availed of within a longer period of limitations, does not make the previous and earlier remedy given by section 129 inconsistent therewith. Indeed the two sections are in perfect harmony. It is a familiar and salutary canon of construction that repeals by implication are not favored. If, when enacting section 132a, the Legislature had intended to take away the remedy given by section 129 as previously construed, they would undoubtedly have said so in plain terms, when dealing with other provisions of the same chapter subsequently.

As an added argument against our construction of section 129, and the reasons given in the prior decisions, based on the apparent necessity for some relief to the taxpayer, it is said that equity always affords relief to a taxpayer against *void assessments* of his property. Here is just where the argument breaks down. There is a marked distinction between a void assessment and one that is merely voidable, as the one in this case. The owner may choose not to avoid the assessment. If so, the assessment would not be void. To avoid it, he must pursue the remedy which the law affords him. He has no

reason for resorting to equity in such cases, and this is the very reason for the holding in *Bank* v. *Spencer, supra,* that the statutory remedy is exclusive and that equity can not be resorted to in cases of voidable assessments at least. This .proposition was distinctly affirmed in the case of *Island Creek Fuel Co.* v. *Harshbarger et al.,* 73 W. Va. 397, and was adhered to in *Pardee & Curtin Lumber Co.* v. *Rose,* 87 W. Va. 484, where it was sought to maintain jurisdiction in equity on the grounds of fraud also. Notwithstanding the charges of fraud, we held the remedy given by statute to be exclusive.

The next ground of objection to the jurisdiction of the circuit court to entertain the appeal is that the record from the board of equalization and review is insufficient, in that the facts proven, and not the evidence of the witnesses adduced on the hearing, were taken down and certified, and that as the circuit court did not have before it the evidence so taken and certified, it had not the jurisdiction to hear and determine the question involved upon the inquiry before the board of equalization and review. The record certified by the board shows that upon the last day upon which the board was authorized to sit, namely the 25th day of August, 1921, the assessor of Wood County appeared before the board and for the first time undertook to place upon the land books for Parkersburg District of said county for assessment the property of the Masonic Temple Society, consisting of the temple building and the lot of ground on which it is located, valuing the lot at $20,000.00 and the building and improvements thereon at $130,000.00, or a total valuation of $150,-000.00. Up to that time the assessor for that year had not nor had the assessor for any previous year ever undertaken to assess this property for taxation, and the society had received no notice of the purpose of the assessor to so assess its property except the verbal notice of the assessor given one or two members of its board of trustees a few hours beforehand. On the day fixed, the certificate of the board shows that the Masonic Temple Society appeared by attorney, and the assessor having placed the property on the land books as proposed, the society entered its protest against the action

of the assessor, and moved the board to strike said property from the land books for taxation and to place the same thereon as property exempt from taxation, which motion was opposed by the state tax commissioner, represented by counsel, and the board proceeded to hear the evidence adduced by the temple society, neither the state tax commissioner nor the State by any other representative offering any evidence whatsoever; and after the hearing the motions were overruled.

The board certified that being without the services of a stenographer, and keeping no record of its proceedings other than the entry of its findings upon the land books, the evidence introduced was not taken in shorthand or reduced to writing, but the board certified the facts proven substantially as follows: That it appeared from the charter of the society introduced in evidence, the Masonic Temple Society was organized as a corporation under a charter issued by the secretary of state March 24, 1916, and recorded in the clerk's office of the county court of Wood County, the objects whereof as stated in the charter being as follows:

"For educational, literary, scientific purposes, and for the purposes of public charity and dissemination of the principles of Free Masonry, the principles of Royal Arch Masonry, principles of the Order of Christian Knighthood, principles of Ancient and Accepted Scottish Rite Masonry, and the principles of Ancient Arabic Order of Nobles of the Mystic Shrine of North America, and for the purposes of maintaining a library and club rooms and social, scientific, literary, educational, and charitable clubs and associations without profit, and for the improvement of morals and sociological conditions and for intellectual development, without profit, and for benevolent and charitable purposes, and to buy and hold real estate and personal property to be used and devoted for the aforesaid and above mentioned purposes."

That after the introduction of the charter, the society also introduced as witnesses in its behalf W. T. Rittenhouse, Robert S. Lemon and James A. Wetherell, and proved by them substantially as follows: That the membership of the Masonic Temple Society was composed of the various Masonic

bodies having their headquarters in the City of Parkersburg; that said Masonic bodies were organized solely for charitable and educational purposes; that they take care of all needy members of the organization, and of the sick, and that their object is to relieve the poor and distressed among them, and to that extent they relieve the State and the county of this burden; that the property of the society had never before been listed for taxation; that all of it was used for charitable purposes, and that no part thereof was let out, leased or used for profit; that the society is a benevolent association, not conducted for private profit; that its property has at all times been used for charitable purposes and for the purposes of moral and physcial education; that the various bodies of the Masonic fraternity occupying the building so assessed are supported by dues and membership fees paid by the members and by initiation fees received from new members; and that the whole of the amounts so received, after paying the expenses of maintenance, is used for charitable and educational purposes; that no part of the property so assessed has ever been used for purposes other than the meeting place of the several Masonic bodies and in the carrying on of its charitable, benevolent and public welfare work, without charge or profit; that each of said bodies constitutes and is a benevolent and charitable association, and is so denominated and classified by the statutes of West Virginia; that the assessment of said property made on the land books is in the name of the Masonic Temple Association, but that the property in fact belongs to the Masonic Temple Society, which carries on no business of any kind for profit, and that no profit of any sort accrues to the members of said society or to any of the affiliated bodies, and that the said bodies and all their property, including the property so assessed, are devoted exclusively to charitable, educational and benevolent purposes; that the building contains no store rooms or other rooms capable of producing a revenue, and was built solely for the use of the Masonic bodies for their headquarters in the City of Parkersburg, and is not adapted, nor can it be advantage-

ously used for any other purposes, and could not be rented for business or commercial purposes.

The only question of fact necessarily involved was the nature and character of the property and the business and status of the owner, and the affiliated or associated bodies interested in the property, and to what purposes the property was devoted and adapted. The evidence of the witnesses, or the facts proven by them, was full and ample on these questions. But the point is made that the certificate was not in compliance with the letter of the statute, requiring that the evidence be taken down and certified. Such we think is too strained a construction of the statute, section 129 of chapter 29 of the Code. We do not think this statute was intended to be given such a narrow construction. Besides, the certificate of the board of equalization and review amounts to a substantial compliance with the statute. It substantially states the evidence on the only material facts. The facts stated were not mere conclusions of law, but the very substance of what the witnesses must have testified to. True, the board of equilization and review is not a court of record, but the statute authorizes them to certify the evidence in appeal cases. Section 9, chapter 131 of the Code, requires the evidence on the trial of causes in the circuit court to be certified. But no one could well contend that if the facts proven and not the verbatim evidence of the witnesses should be certified, and that without objection, the appellate tribunal would be without jurisdiction to hear and determine the appeal. To so hold would be to sacrifice substance to mere form. We are ministers, ''not of the letter, but of the spirit (of the law) ; for the letter killeth, but the spirit giveth life'' to the law. And so we held in *King* v. *Jordan,* 46 W. Va. 106, 110, that if before the act requiring it, the evidence was certified, that would not preclude a consideration of the case in this court, so now, notwithstanding the act, a certificate of the facts proven, without all the evidence, should not prevent a consideration of the case, the statute being directory, not mandatory. We think section 129 should be so liberally construed, and that the motion to dismiss the appeal on the

ground that the facts proven and not the evidence was certi-fied, was properly denied by the circuit court.

The only question of merit presented, is whether the circuit court erred in denying the taxability of the Masonic Temple Society's property. Exemption of this property is predicated on various provisions of our constitution and statutes and prior decisions of this court. Section 1 of Article X of the Constitution permits the Legislature, with certain other pro-perty, to exempt "property used for *educational, literary, scientific,* religious or *charitable* purposes." We italicize those purposes strictly covered by the charter of the temple society. And we emphasize the fact that the constitution does not say used exclusively for those purposes. Nor does it limit the Legislature in such exemption to purely public charities as distinguished from private charities. Section 1 of chapter 55 of the Code, relating to the incorporation of non-stock associations, says: "Corporations (other than joint stock companies) may be formed under this chapter for benovelent associations, societies and orders, including cemetery associations, orphan, blind and lunatic asylums and hospitals, lodges of free and accepted masons, independent order of odd fel-lows," etc. Section 57 of chapter 29, the chapter relating to as-sessment of taxes, provides that: "All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation; that is to say:" etc. And among the classes of property thereby exempted are: "property used for charitable purposes and not held or leased out for profit; * * * all property belonging to benevolent associations not conducted for private profit and used exclus-ively for the purpose of moral and physical education, all books, furniture, apparatus and instruments belonging to such society." And section 119 of chapter 32, the chapter relating to license taxes, says that its provisions "shall not apply to literary, dramatic, musical or *benevolent societies,* where they do not give exhibitions outside of their own counties." And section 138 of the same chapter says: "Nothing in this chapter shall be construed as imposing a license tax on corporations chartered strictly for educational,

literary, agricultural, scientific, religious or charitable purposes, or upon charters incorporating cemeteries or lodges of masons, odd fellows or the like, or other charitable, fraternal or patriotic societies not incorporated for profit to the stockholders; but the secretary of state shall require full proof as to the character of any such corporation claiming such exemption from the payment of license tax.''

That the Masonic Temple Society, limited and prescribed by its charter, is of the class of non-stock corporations organized not for profit, but for the purposes designated therein, and by the constitution and laws referred to exempt from taxation, seems to us beyond doubt. The evidence or facts proven before the board of equalization and review show clearly that it is engaged in no business or practices not authorized by its charter. But the State insists that the property of the society, the temple building, is not used strictly for charitable purposes, but as a club house or rendezvous where activities other than charitable and benevolent ones are carried on, and that being so its property is liable to assessment and payment of taxes. The State also undertakes to institute some distinction between property belonging to a charitable or benevolent institution and the organization itself, which may be exempt, insisting that under section 1 of article 10 of the constitution its property is taxable, notwithstanding the same section authorizes the Legislature to exempt property used for charitable purposes. We fail to appreciate this refinement. If property used for such purposes may be exempted, it matters not to whom it belongs, whether it be a Masonic or other benevolent order; and we think the Legislature in the several provisions of the statute referred to has undertaken to do this, and that the provision of the constitution requiring uniformity of taxation has no application. The sole question is, is the property of the temple society devoted to charitable and benevolent purposes? The facts proven and certified, we think, leave no doubt on this question. And it follows that none of the authorities cited by counsel on this important question of constitutional law have any real application to the question before us. The distinction sought

to be drawn between the meaning of the word "charitable" as used in the constitution and the word "benevolent" also used in the statute, as describing a certain class of associations whose property is exempted when used *exclusively* for the purposes indicated, is not well conceived. The proof shows that the property of the temple society is used *exclusively* for charitable and benevolent objects.

Counsel for the State would also apply section 30, chapter 55A of the Code, to the case here, which exempts the funds of a fraternal benefit society, but not its real estate and office equipment, from taxation. Clearly this statute applies to fraternal benefit societies, and not to the property of a charitable or benevolent society which is itself used for charitable purposes. In fact section 29 of this chapter says that nothing in the act shall be construed to affect or apply to grand or subordinate lodges of Masons, Odd Fellows or Knights of Pythias (exclusive of the insurance department, etc.)

It is furthermore argued that no case in West Virginia has ever held that a Masonic lodge is a charitable institution, nor any holding its property to be exempt from taxation. But there are cases holding that the property of like organizations used for the purposes enumerated in the constitution and statutes referred to, is or may be exempted by law. In *Reynolds Memorial Hospital* v. *County Court,* 78 W. Va. 685, we laid down the proposition that, "if the property is used for charitable purposes within the meaning of the Constitution, then it is exempt from taxation; if it is not so used, it is not exempt." And in the recent case of *State* v. *Kittle,* 87 W. Va. 526, we applied this liberal rule of construction to the statute in the case of a church parsonage which was not occupied by the minister, but rented out for the time being and the rent applied to church purposes. In that case we held the property had not been forfeited to the State for non-payment of taxes.

And while it may be true that we have no decisions in this State, as counsel for the State cited, specifically holding the property of Masonic lodges exempt from taxation, we have statutes recognizing their charitable and benevolent char-

acter, and permitting their incorporation as such; and we know from the facts proven in this case that the property of the Masonic Temple Society here involved is used for charitable and benovelent purposes exclusively. The law makes no distinction between persons or corporations whose property may be exempted. In our statute of charitable uses, section 3 of chapter 57 of the Code, societies of Free Masons are numbered among those to whom conveyances of lands may be made, to trustees or without the intervention of trustees, for benevolent and charitable uses.

And we have many precedents from states having like or similar constitutional and statutory provisions to those of our own. With but few exceptions, which are distinguishable because of the differences in the language of the constitutions or statutes, they unite in holding that Masonic societies and lodges or orders of like character are charitable institutions, and that their property when devoted to benevolent or charitable purposes may be lawfully exempted, and are generally exempted by law from taxation.

In Virginia, from which we have derived most of our laws and policies, such societies are exempted. It was held in *Petersburg* v. *Petersburg Benevolent Mechanics' Association*, 78 Va. 431, that a statute which provided that the real estate owned by Masonic, Odd Fellows and other like benevolent associations, when the proceeds arising from such property are devoted exclusively to charitable or educational purposes, shall be exempt from taxation, carried with it the exemption of such proceeds however acquired. Under this statute the same rule was applied with even more liberality to funds received by a Y. M. C. A. from donations or other sources and devoted to the work of the association. *Commonwealth* v. *Lynchburg Y. M. C. A.*, 80 S. E. 589, 50 L. R. A. (N. S.) 1197. And in *State* v. *Kittle, supra,* we gave our statute like liberal construction. The principal cases cited and relied on by counsel for the temple society are: *Burdine* v. *Grand Lodge*, 37 Ala. 478; *Horton* v. *Colorado Springs Masonic Building Society,* (Colo.) 173 Pac. 61; *City of Savannah* v. *Solomon's Lodge No. 1, F. & A. M.*, 53 Ga. 93; *Morrow*

v. *Smith,* 145 Iowa 514, Ann. Cas. 1912A, 1183; *Indianapolis*
v. *Grand Lodge,* 25 Ind. 518; *Grand Lodge of Masons* v. *Board
of Review of Moultrie County,* (Ill.), 117 N. E. 1016; *Mason*
v. *Zimmerman,* 81 Kans. 799; *State ex rel. Bertell* v. *Board
of Assessors,* 34 La. Ann. 574; *Appeal Tax Court* v. *Grand
Lodge,* 50 Md. 421; *Baltimore* v. *Grand Lodge,* 60 Md. 280;
*King* v. *Parker,* 9 Cush. 71; *Plattsmouth Lodge No. 6, A. F.
& A. M.* v. *Cass County,* 79 Neb. 463; *State of North Dakota
ex rel. Linde, Attorney General* v. *Packard,* L. R. A. 1917B,
710; *State ex rel. Grand Lodge* v. *Addison, Sheriff,* 2 S. C.
499; *Morris* v. *Lone Star Chapter No. 6, R. A. M.,* 68 Texas,
698; *Cumberland Lodge* v. *Mayor of Nashville,* (Tenn.), 154
S. W. 1141; *Hardin* v. *Rock Springs Lodge of Masons.*
(Wyo.), 154 Pac. 323. Some of these cases are criticized and
sought to be distinguished, as either controlled by the pecul-
iar facts, or by the particular statutes involved, and some
of them not involving the question of taxation. But it may
be said of all of them, that they unite in holding Masonic
societies or orders to be charitable and benevolent societies;
and without exception, we believe, those which deal directly
with the subject of tax exemption unite in holding that when
the property, real or personal, held by such a society is held
exclusively for charitable and benevolent objects, it may be
exempted by law from taxation, but if not so devoted, as in
some cases where the building or other property is rented out
and revenue derived therefrom for profit, as store rooms, of-
fices or other commercial or business purposes, the property so
employed does not come under the laws exempting property
devoted to charitable purposes. We have already referred to
the Virginia cases. And in Missouri, for instance, the con-
stitution and statute exempts property "when used exclu-
sively for purposes purely charitable." (Our constitution, as
we have noted, does not contain the word "exclusively.")
In the case of *Fitterer* v. *Crawford,* 157 Mo. 51, 50 L. R. A.
191, such property was there held exempted, except when
rented out for profit. In *Cumberland Lodge* v. *Mayor of
Nashville, supra,* the constitution exempted from taxation pro-
perty used "purely" for charitable, educational or religious

purposes. The statute exempted all property belonging to any religious, charitable or educational institution when used exclusively for those purposes. The court held that the word "purely" in the constitution, and the word "exclusively" employed in the statute, were synonymous, and required that the property be used wholly for charitable purposes and not to any extent for profit or gain. In *Grand Lodge of Masons* v. *Board of Review of Moultrie County, supra,* it was held that a farm conveyed to a Masonic lodge, subject to an annual charge in favor of the grantor, and for the benefit and as a home for sick Masons, was exempt from taxation as a charity, and that the reservation in favor of the grantor did not affect the character of the property as a charity. In *Horton* v. *Colorado Springs Masonic Building Society, supra,* the property involved was a building owned and used very like the property under consideration here, and was supported by funds derived from dues and donations, and used, the evidence shows, like the funds in this case are used. The constitution allowed an exemption of property used "for strictly charitable purposes," and the property was held to be exempt, although some of the rooms in the building were used for entertainment, and a cigar stand was maintained for the accommodation of members, if the surplus receipts therefrom were devoted to the maintenance of the building. In *Plattsmouth Lodge No. 6 A. F. & A. M.* v. *Cass County, supra,* the property involved was the second story of a building in the City of Plattsmouth, Nebraska, with the furniture therein, used exclusively for lodge purposes, the first story of the building being occupied by a bank, and not owned by the lodge. The constitution exempted from taxation property used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, when so provided by general law. The statute, among other properties, exempted from taxation properties in the language of the constitution used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes. The court held that the property of the lodge, which it was agreed was used exclusively for charitable purposes, was within the

provisions of the constitution and statute, and was therefore exempt from taxation. In referring to this case, counsel for the State say that, as the stipulation of facts brought the case clearly within the provisions of the statute, the court was obliged to hold as it did, that the property was exempt. In the case here the facts proven and certified show that the property of the temple society is used exclusively for charitable purposes. In the *State of North Dakota ex rel. Linde Attorney General* v. *Packard, supra,* the constitution required the legislature by general law to exempt from taxation property used exclusively for school, religious, cemetery and charitable purposes. The statute enacted in pursuance thereof undertook to exempt from taxation personal or real property owned by charitable associations known as posts, lodges, chapters, councils, commanderies, consistories, and like organizations and associations not organized for profit, grand or subordinate, and used by them for places of meeting, and to conduct their business and ceremonies, provided that such property is used exclusively for such charitable purposes; and it was held that a building belonging to a Masonic organization, and devoted exclusively to Masonic use, the greater portion of said building being used for the place of meeting in which to conduct the business and ceremonies of various subordinate Masonic bodies, but a small portion thereof being occupied by the office of the grand secretary, was exempt from taxation under the provisions of the statute, and that the legislature had not exceeded its constitutional powers in enacting the statute.

Some of the cases cited hold that such property is none the less exempt as being devoted exclusively to charitable purposes, because the charity of such society is limited to the membership thereof. *Petersburg* v. *Petersburg Benev. Mech. Asso., supra; Horton* v. *Masonic Lodge, supra; Fitterer* v. *Crawford, supra; Indianapolis* v. *Grand Master, supra; Portland Hibernian Benevolent Society* v. *Kelley,* (Ore.) 30 L. R. A. 167. In the case of *Book Agents of Methodist Episcopal Church, South,* v. *Hinton,* (Tenn.), 19 L. R. A. 289, the liberality of construction of constitutions and statutes.

observed in other states was extended to the property of an incorporated publishing house under the control of the church which did some secular work in its job office, and printed and manufactured books and circulars, in the interest and under the auspices of the church, whereby it raised a fund to support its worn-out preachers and their families.

The cases mainly relied on by the State are cases like those from Pennsylvania, Ohio and Wisconsin, where the constitution and statutes limit such exemptions to property of a *purely public* character, to the exclusion of all private institutions, such as we have involved here. *Philadelphia* v. *Masonic Home,* 160 Pa. St. 572; *Baraca Club* v. *City of Madison,* 167 Wis. 207; *Gerke* v. *Purcell,* 25 Ohio St. 299.

But one case is referred to where the constitution contains a similar provision to ours, and where it was held that the property of a Masonic lodge is not exempt from taxation. That is the case of *Bangor* v. *Masonic Lodge,* 73 Me. 432. In that case the court undertook to apply the principles of the Pennsylvania and Ohio cases, controlled as they are by the special provisions of constitutions limiting such exemption to *public* charities, although conceding that Masonic lodges are charitable institutions. This decision is opposed to our own and the decisions of Virginia and many other states, as those we have cited and many others will attest. A review of all the cases cited by counsel and related to the subject, is not within the reasonable limits of this opinion. Those we have reviewed illustrate the principles applicable to the case we have here.

What we decide here is that the property of a Masonic order devoted exclusively to the purposes of its business as a charitable and benevolent organization, is exempt from taxation under the constitution and laws of this State. The result is that the judgment of the circuit court must be affirmed.

*Affirmed.*