## No. 12,527.

PEOPLE EX REL. WINBOURN *v.* DISTRICT COURT EIGHTH
DISTRICT ET AL.

(287 Pac. 849)

Decided April 21, 1930.

Mr. Robert E. Winbourn, Attorney General, Mr. Charles Roach, Deputy, Mr. Fred A. Harrison, Assistant, for petitioners.

Mr. Claude C. Coffin, pro se; Mr. John R. Wolff, Mr. Thomas A. Nixon, Mr. Horace N. Hawkins, for intervening respondents.

*En Banc.*

Mr. Justice Adams delivered the opinion of the court.

This matter is before us on original proceedings upon the answer and return to an order to show cause why a writ of prohibition should not issue to restrain the district court of Boulder county from further proceeding in a suit there pending. This cause is brought in the name of the people, upon the relation of the Attorney General, the Colorado Tax Commission and the three members thereof against the district court and judge thereof. The plaintiffs in the district court were allowed to intervene in the proceeding in this court.

The cause in the district court is a suit in equity; it is entitled, "complaint in injunction," and was brought in the name of the people on the relation of the several boards of county commissioners of fourteen counties and two individuals, as plaintiffs, against the Colorado Tax Commission, the three members thereof, and the several county assessors of forty-seven counties throughout the state as defendants. Our reference hereafter to petitioners means the petitioners in the present application for a writ of prohibition, and the word respondents means the respondents herein, including respondents who were allowed to intervene here. The word plaintiffs, as hereafter used, means the plaintiffs in the district court, and the word defendants means the defendants there.

Plaintiffs' complaint as amended, hereinafter designated as the complaint, is set forth in haec verba in the petition in this court. As far as material at this point, it alleges in substance as follows: Thirty-three designated public utility corporations owned property of the fair and true cash value, for the purposes of taxation for the year 1929, of over $300,000,000. It is claimed that the tax commission pretended and attempted to value and assess said property on a basis of twenty-five to seventy-five per cent of its true cash value. That the commission was guilty of gross, habitual, arbitrary, capricious, unlawful, illegal, discriminatory, fraudulent and void prac-

tices, methods and procedure, in that the commission deliberately and intentionally fixed the total assessments of said corporations at about $100,000,000 below the aggregate cash value of the tangible and intangible value of said corporations. It is alleged that such practices were adopted for the special benefit of thirty favored corporations, and were not uniformly applied to the fixing of valuations of the property of over two hundred other similar corporations in Colorado, which defendant commission was required by law to value and assess in the year 1929. The complaint goes into detail as to the unlawful methods claimed to have been pursued by the tax commission, and avers other alleged similar illegal practices involving other taxpayers.

The complaint further alleges that the counties of Boulder and Weld, two of the interveners here, also plaintiffs in the district court, applied to the state board of equalization for relief from the action of the tax commission, but relief was denied. Hoover and Bixler, plaintiffs, claim to be resident taxpayers whose property has not been assessed on a uniform basis.

Plaintiff prayed for an injunction against the tax commission to restrain it from making and enforcing "said pretended and void assessments" of the thirty-three corporations, and the levy and collection of the taxes thereon until the further order of the court. Also for an injunction against the county assessors, to restrain them from extending the assessments on the tax rolls of the relator counties, and from certifying to the county treasurers of such counties the assessments made against the said corporations until the further order of the court. Also for a mandatory injunction, commanding the tax commission to cancel and set aside the "pretended and void assessments," and to value and assess the property of each of said corporations in the manner provided by law. Further details of the complaint as amended will be stated in the opinion. Demurrers thereto were overruled. The case was tentatively set for hearing in the district court,

but was interrupted by the application for a writ of prohibition.

The answer and return of respondents filed in this court in response to the order to show cause, contain this statement: ''In the argument in opposition to the demurrer, plaintiff's counsel Horace N. Hawkins announced that upon any hearing of the applications for an injunction the plaintiffs would not ask the court to set aside or interfere with any assessment which had already been made by the Tax Commission, would not ask the court to make any assessment against any company, and would not ask the court to order said Colorado Tax Commission to increase the assessment of any company, but would on such application ask that the court order said Commission to reconvene, and make an additional assessment against any corporation which the Commission itself should find, after evidence, had been under-assessed, after due notice being given to such corporation, and after such corporation had full opportunity to present evidence and be heard, and that no injunction would be asked against any county assessor, and that the county assessors would be in no way prevented from pursuing their duties the same as if no complaint had been filed.''

1. It is not our purpose on this application for a writ of prohibition to do more than is necessary to determine whether or not it should be allowed, but to do this we must first discuss the subject matter of the action sought to be stayed, to decide whether the trial court has jurisdiction over such subject matter. If jurisdiction has not attached, it is discretionary with this court to allow or disallow prohibition.

2. We are confronted at the outset with plaintiffs' anomalous position created by the disparity between the complaint and that which their chief counsel has subsequently announced as their present ground of attack. They are irreconcilable. In particular, whether there was fraud or not in the *manner* of assessment, and the results thereby obtained, as alleged in the complaint,

nevertheless, one of plaintiffs' leading counsel now gives the court to understand that plaintiffs will not ask the court to set aside or interfere with *any* assessment already made by the commission. Another contrast is in the complaint which declares on alleged under-assessments to the extent of $100,000,000, but now counsel for plaintiffs say they will not ask the court to make *any* assessment against *any* company, or order the commission to increase the assessment of any company. We remark that noninterference with assessments as made precludes the disturbance of such assessments. It prevents a reassessment, whether up or down.

3. The suit to enjoin forty-seven county assessors is abandoned; the county treasurers may proceed to collect taxes based on assessments as made, according to counsel for plaintiffs, but if those assessments are to remain stationary, as they must under counsel's statement in open court, there is nothing for the court to determine, at least in the suit now pending in the district court, for their legality is no longer open to question. An assessment cannot be void and valid at the same time, at the convenience of the pleader, and the withdrawal of a contest on any assessment based on fraud is tantamount to a withdrawal of the charge that it was fraudulently procured. Charges which, even if sustained, are to result in a policy of noninterference with the assessments that have been made, are altogether idle.

4. It is mere play on words to say that it is not the *court*, but the *commission*, that is asked to review their work. The coercion sought to be imposed on the administrative body is to come, if at all, from the court, the commission to do its bidding in a particular way, and to perform acts not authorized by law. Counsel's modified position would allow plaintiffs to obtain by indirection an advantage not possessed under the complaint; i. e., to insure against any revision downwards, but to make a revision upwards and only upwards the goal. This proposal is offered as a liberal inducement or concession to

"equity," but it is not well named. It concedes nothing to the commission or to the taxpayer who supplies the revenue. It would take away their rights. A rehearing might possibly warrant a reduction, but that would be denied under the system proposed. We cannot presume that the discretionary powers of the board are not to be interfered with, when thus inhibited at the outset. Counsel has qualified his statement, as will be seen above, but to intimate that an "additional" assessment on "under-assessed" property does not result in an increased assessment is merely a faulty arithmetical computation.

5. The present position of counsel for plaintiffs is an abandonment of the theory of the complaint. There is, therefore, nothing for defendants to answer. Plaintiffs invoked equity on the ground of fraudulent assessments that they now want to stand so that the taxes can be collected. It is equivalent to an admission of their validity, pro tanto at least. The charges of gross and systematic fraud that must have shocked the conscience of the chancellor when the complaint or complaint as amended was filed need no longer menace his peace of mind. This is not because fraud does not tend to shock the minds of honest men, but because it is little if any less shocking to make incontinent charges of corruption and breach of trust against public officials that plaintiffs are unable or unwilling to follow up with proof in a lawful manner. Plaintiffs' present theory, as nearly as we can make out, is one of additional assessments only, but they have never asked the tax commission to make such assessments. We discuss this more fully hereafter.

6. It is to be kept in mind that this is a suit in equity, but equity will not act when there is a plain, speedy and adequate remedy at law. *First National Bank v. Board of County Commissioners of Weld County,* 264 U. S. 450, 44 Sup. Ct. 385, 68 L. Ed. 784; *First National Bank v. Patterson,* 65 Colo. 166, 173, 176 Pac. 498; *Union National Bank v. Commissioners of Weld County,* 75 Colo. 298, 299, 225 Pac. 851; *Standard Oil Company v.*

*Magee,* 191 Ill. 84, 60 N. E. 802; *County Commissioners of Bent County v. Atchison, T. and S. F. R. R. Co.,* 52 Colo. 609, 125 Pac. 528; *Pardee & Curtain Lumber Co. v. Rose,* 87 W. Va. 484, 105 S. E. 792. Other cases might be cited, but these are enough. Some of them are in proceedings to restrain the collection of taxes, but a mandatory injunction to compel an additional tax is not different in the application of the equitable principle stated. From the West Virginia case of *Pardee and Curtain Lumber Company v. Rose, supra,* we quote with approval these apt words (page 488 of the opinion): ''The question here is whether this statutory remedy must be invoked by the plaintiff or whether it can select a remedy by injunctive process in a court of equity. The decision rests upon whether or not there is an adequate, complete and plain remedy at law. The courts and text writers almost uniformly hold that when a statute provides a remedy against excessive, erroneous or improper assessments before some officer or board appointed or elected for that purpose, the party aggrieved must at his peril avail himself of this remedy and cannot resort to the courts in the first instance; and if he neglects to avail himself of the statutory remedy provided, he cannot assail the assessment in a collateral proceeding nor invoke the equitable powers of the courts for redress. *West Va. National Bank v. Spencer,* 71 W. Va. 678. Cooley on Taxation (2nd Ed.) Vol. 2, p. 1379; 37 Cyc. p. 1079.''

7. One of the statutory authorities of the tax commission is to hear petitions and complaints for the correction of illegal and erroneous assessments, filed with the commission on or before the twenty-fifth of the succeeding August. §7287, C. L. 1921. Under this statute the commission is required to meet on the second Monday in September, and succeeding days if necessary, to hear such petitions and complaints. This is an important remedy at law, of which plaintiffs did not avail themselves. Another provision overlooked by plaintiffs was ''to appear before the board [tax commission] and submit to it

any facts which may tend to inform the board [commission] or give it information, to the end that a fair and equitable assessment of such property may be made." §7307, C. L. 1921.

■ 8. The tax commission is in continuous session and its hearings are open to the public. §7330, C. L. 1921. It may raise or lower assessments, on due notice. Paragraph 7, §7334. The complaint shows on its face that "the pretended and void assessments" were made by the commission on June 15, 1929. It shows that on the same date the commission transmitted to county clerks detailed statements as required to do by that time by section 7308, C. L. 1921. Plaintiffs complain that they did not acquire the necessary information until October, 1929, when the state board of equalization met, but it cannot be that information transmitted to county clerks, who are ex officio clerks of the boards of county commissioners, was secret. And if the commission kept information from plaintiffs that they were entitled to receive, disclosure could have been compelled. The plaintiffs are not helped by such allegations.

■ 9. Mere lack of confidence in a public official is not enough to divest him of his jurisdiction or statutory powers. Common fairness demands that before resort to court the official's attention be called to failure to perform a statutory duty, if he has failed in his understanding of the law or facts. As said at page 454 of the opinion of the United States Supreme Court in *First National Bank v. Commissioners of Weld County,* supra: "* * * We cannot assume that, if application had been made to the commission, proper relief would not have been accorded by that body, in view of its statutory authority to receive complaints and examine into all cases where it is alleged that property has been fraudulently, improperly, or unfairly assessed."

■ 10. It may be well said of plaintiffs, as was said in *Pardee and Curtain Lumber Company v. Rose, supra,* page 489: "* * * but plaintiff abandoned the remedy

when it concluded that the board was hostile to it. It stopped at the half-way house and turned back. It cannot be conclusively presumed that strong and convincing evidence, produced before the board, would not have changed its apparently preconceived conclusions. There are many instances where eminent jurists have been obliged by better information or fuller consideration to change their opinions on very important subjects, which they once thought right, but found to be otherwise.''

██ 11. Counsel for respondents cite *Boulder & Left Hand Ditch Company v. Hoover,* 48 Colo. 343, 110 Pac. 75, as authority for the proposition that a mandatory injunction lies to compel the performance of an official duty. The proposition is undeniable, but even when a right exists, neither justice nor equity admit of resort to court proceedings to compel the distribution of water according to decreed priorities without demand and refusal. To do so would flood the courts with unnecessary law suits. The situation here does not come under that class of cases where demand is unnecessary, because it would prove unavailing. The attempt to stigmatize a whole administrative body by coercing it to do something that it has not been asked to do cannot be used as a substitute for statutory remedies, or as an excuse for failure to invoke such remedies. As we said in a per curiam opinion in *Mountain States Beet Growers' Marketing Association v. Wagner,* 79 Colo. 604, 605, 247 Pac. 804, ''Equity will not interfere in behalf of one who has an adequate remedy in his own hands; it will not help those who refuse to help themselves.''

██ 12. In *State Board of Equalization v. People ex rel. Goggin,* 109 Ill. 528, 61 N. E. 339, it is held that where there is no one empowered to make a demand for the performance of a public duty, the law imposing the duty stands as a continual demand and there is no necessity for a specific demand and refusal. Coming back to Colorado, the duties of the tax commission are statutory, and if there be no right or obligation in this state on the part

of an interested party or taxpayer to demand of the tax commission that it perform an alleged duty, by the same token there is no right of a court of equity to order it to be done, as far as any matter here involved is concerned. We say this because the provisions of our statute for the correction of illegal and erroneous assessments on property are so complete (section 7287, C. L. 1921) that the legal remedy is adequate. If it were not so, equity might intervene *(County Commissioners of Bent County v. A. T. and S. F. R. R. Company, supra)*, but since there is a statutory remedy, the law must prevail.

13. We advert to the recent decision of the United States Court of Appeals in *Union Pacific R. R. Company v. Board of County Commissioners of Weld County*, 35 Fed. (2d) 785. It pertains to the duties of the state board of equalization; it refers to the adjustment of individual valuation, and to equalization by dealing only with classes and sub-classes of property. The case is mentioned in the briefs, but it has no application to the matters here decided. It is therefore unnecessary either to approve or disapprove of that opinion.

14. We are urged to decide certain constitutional questions, but they will not be passed upon because not essential to the determination of the case. This rule was stated by Mr. Justice Campbell in *Gale v. Statler*, 47 Colo. 72, 105 Pac. 858, and repeated in *Mountain States Beet Growers' Marketing Association v. Monroe*, 84 Colo. 300, 315, 269 Pac. 886, with reasons and numerous citations, including one from the highest court of the land written by Mr. Chief Justice Taft.

In adherence to long established practice, we said in the Beet Growers case, supra, at page 315, ''The business of the court is to decide pending cases, not abstract legal subjects, constitutional or otherwise, disconnected with the case or unnecessary to the decision, however desirable it may be to have such themes discussed.''

15. The majority of the justices are convinced that the proceedings now pending in the district court

are futile; that the lower court would be acting beyond its jurisdiction if it goes farther. We are further convinced that the question is publici juris, that the cause is of the utmost gravity and importance and that there is no adequate and speedy remedy to the petitioners against the unwarranted action of the court except by prohibition. *People v. District Court,* 71 Colo. 390, 206 Pac. 572; *People v. District Court,* 26 Colo. 386, 58 Pac. 604, 46 L. R. A. 850; *People v. District Court,* 29 Colo. 182, 68 Pac. 242.

16. The inquiry propounded by respondents' counsel as to "what harm can be done" by going on with the suit carries its own answer with it. The danger of delay in payment of taxes, the crippling of public institutions and schools for lack of funds, and all parties as well as the public in a quandary as to the ultimate outcome. And at that, the question is incomplete, for we are not concerned alone with what *harm* can be done, but what is the *good* of going on with a vain proceeding. It is estimated that the cause involves about one-seventh of our public revenue. No good can result from the prosecution to final judgment of a suit of such far-reaching consequences in the district court, especially when we are now fully resolved that it must be reversed if the judgment or decree for which plaintiffs ask be granted. It is no answer to say that the honorable trial court may not award such a judgment or decree. We say this because the attempt itself to procure such a result is an evil. It has no sanction in law or equity, and the writ of prohibition offers a seasonable opportunity for the placement of a period to futile proceedings in the district court.

17. The people themselves by various constitutional enactments have expressed their will on the subject of public revenue. The general assembly, in regular and extraordinary sessions, have endeavored to provide a just system of uniformity in taxation. These provisions are available to the humblest taxpayer, as well as the mightiest, but the keenest blade will cut nothing when

left to rust in its scabbard, and they who put off their summer and autumn tasks until the winter snow flies can expect to reap no harvest. This court will not assume responsibility for their neglect. This suit was brought to escape the consequences of complainants' neglect of ample statutory remedies, but it has been said over and again by this court and others that equity will not relieve from the consequences of one's own neglect. We put the burden where it belongs.

The peremptory writ is ordered, directing that no further action by the court be taken in the cause now pending, except the entry of dismissal thereof.

Writ of prohibition granted.

MR. JUSTICE BUTLER and MR. JUSTICE BURKE dissent.

MR. JUSTICE BUTLER dissenting.

I am unable to agree with the conclusion that a peremptory writ of prohibition should issue. District courts are constitutional courts of general jurisdiction. They possess full power, and exercise it daily, to pass upon demurrers and answers raising the question of the jurisdiction of the court. Their rulings thereon are reviewed by this court on writ of error. To justify this court in departing from the regular course and, by the extraordinary writ of prohibition, preventing a trial court from proceeding in a case pending before it, the case and the occasion should be extraordinary. The mere fact—if it is a fact—that the district court was about to act without or in excess of its jurisdiction is not sufficient to justify this court, in the exercise of its discretion, in awarding the writ. Where a trial court had overruled an objection to its jurisdiction and was about to adjudicate a cause on the merits, we denied an application for a writ of prohibition because the objection could be examined upon review on error. *People ex rel. v. District Court,* 11 Colo. 574, 19 Pac. 541. We there warned against the danger of permitting prohibition to be substituted for writ of error

as a method of review. In *People ex rel. v. District Court,* 32 Colo. 469, 77 Pac. 239, we said: "We shall deny this application, if for no other reason, because by appeal or writ of error from the final judgment in that action, in case of an unfavorable decision, the relief to which plaintiffs are entitled may be awarded. These applications invoking the original jurisdiction of this court are becoming altogether too frequent, and excepting in extreme cases where the right to the extraordinary relief clearly appears, and the usual remedy is not full, speedy and adequate, we are disposed to remit the parties to their ordinary remedies which, in most cases, prove efficacious." In *People ex rel. v. District Court,* 74 Colo. 40, 218 Pac. 745, we held that a writ of prohibition will be denied when a writ of error would furnish an adequate remedy. And see *Tomboy Gold Mines Co. v. District Court,* 23 Colo. 441, 48 Pac. 537. In the present case a writ of error would afford an adequate remedy.

The application for the writ made a showing that justified this court in ordering the respondents to show cause. It appeared therefrom that the plaintiffs in the equity suit sought to have the assessments of the property of thirty-three corporations declared void, and also prayed for injunctive relief, as stated in the majority opinion; all of which, it was prophesied and feared, would throw the revenues of the state and its several agencies into a chaotic condition. In short, there was presented a case that called for an order to show cause. With the coming in of the return, all that was changed, and it was evident that the fear was groundless. It appeared that counsel, by his statement to the trial court, had so narrowed the demands of the plaintiffs as to remove the apprehended danger and to take away all necessity for prohibiting the district court from proceeding with the suit in the ordinary way. And in their brief filed in this court counsel for the respondents say: "* * * all that will be asked in the case is that the Tax Commission itself be directed to determine, after a full hearing, whether or not any addi-

330

tional assessments should be made. * * * How can the public be in any way damaged, how can the collection of taxes be in any way endangered, how can the collection of any taxes be indefinitely postponed, how can any prejudice or damage result to the public interest by the district court being permitted to determine whether or not on the evidence introduced before the court an order should be made directing the Colorado Tax Commission to consider the question as to whether or not additional assessments should be made?'' The fact that the prayer of the complaint was broad and comprehensive does not prevent the plaintiffs from thus narrowing their demands and contenting themselves with only a part of the relief originally sought. *Hobbs, Commissioner of Insurance, et al. v. Pollock, District Judge,* 280 U. S. 168, 50 Sup. Ct. 83, decided in the October, 1929, term.

If upon the application for the writ it was alleged that the plaintiffs in the district court sought only the relief ultimately demanded, it is incredible that we would have ordered the respondents to show cause; the application would have been, or should have been, dismissed. The equity case should be permitted to take the usual course. The district court may be relied upon to protect fully the rights of all, so far as the law, the facts and the jurisdictional limits of the court permit. If, however, it should fall into error, a review by writ of error would afford adequate relief. The rule to show cause should be discharged and the petition dismissed.

Mr. Justice Burke concurs in this dissenting opinion.