[No. 7950.]

THE PEOPLE EX REL. v. THE DISTRICT COURT OF THE
SIXTH JUDICIAL DISTRICT ET AL.

1. PROHIBITION—*Not a Writ of Right*—Whether it shall be granted rests in the sound discretion of the court.

2. ——*Diligence Required*—One who acquiesces in a judgment or order will not afterwards be allowed a writ of prohibition to restrain action thereunder.

On the 7th of February, A. D. 1911, in the district court, receivers were appointed for a corporation alleged to be possessed of valuable properties, but largely indebted and without ready means to discharge pressing debts, or accumulating taxes, or to operate its property. The bill upon which the appointment was made alleged not only these matters, but that if creditors were allowed to proceed with their actions, dissipation and waste of the corporate assets would result, to the injury of both creditors and stockholders. On the first of March succeeding, other creditors and stockholders applied for leave to intervene in the cause, alleging that the receivers were appointed without notice, that the attorney who assumed to appear for the corporation and consent to the appointment, acted without authority, and that the bill was without equity. This application was denied on March 11, A. D. 1911. No exception was taken to the ruling, and no further action had until January 6th, A. D. 1912, when the same creditors and stockholders presented a second petition for leave to intervene, setting forth their first petition and the action taken thereon, reiterating its statements, and alleging that in denying such original application the court was influenced by representations made at the time of the receiver's appointment, that a person named would shortly raise the means necessary to pay the pressing liabilities of the company, and enable it to operate its properties, and become a going concern; that none of these assurances had been carried out; that the person making them was without means of his own, and unable to raise money from other sources, and that the appointment of the receivers was procured merely to harass the creditors and stockholders of the company, and constrain them to part with their demands, and their shares at a great sacrifice. Delay in the presentation of the second petition was excused by the suggestion that the petitioners had been advised that it would be improper and unavailing for them to renew their application until a reasonable time had elapsed for the fulfillment of the promises and assurances made to the court as above stated. This petition was denied on January 6th, A. D. 1912. On the 22nd of January, 1913, application was made in this court, for a writ of prohibition, restraining the district court from further proceeding

under the order appointing the receivers, and for other relief.  *Held*, that the delay intervening between the denial of the first petition and the presentation of the second was an acquiescence in the appointment of the receivers, and that such acquiescence, and the long delay succeeding, before the application of this court, were sufficient to warrant the court in refusing to enter into the merits of the controversy, by the writ of prohibition.

.    3.  INTERVENTION—*Petition Denied—Writ of Error*—The denial of a petition for leave to intervene in a pending cause is a final judgment to which error lies.

*Original application for writ of prohibition.*

Mr. A. M. STEVENSON and Mr. L. M. GODDARD, for petitioners.

Mr. CHARLES W. WATERMAN and Mr. CALDWELL MARTIN, for respondents.

Mr. JUSTICE HILL delivered the opinion of the court:

This is an original application for a writ of prohibition to restrain the district court of San Juan county and the Honorable Charles A. Pike, judge thereof, from proceeding further in a certain cause pending in said court, and to compel the court to quash, set aside and annul certain orders appointing receivers therein, and authorizing receivers' certificates of indebtedness.   The order and rule to show cause were issued, and return made thereto wherein the respondents challenge the sufficiency of the petition, etc.; it also, raises the question of acquiescence and laches upon behalf of the petitioners.

Upon February 7th, 1911, E. E. Dick, as plaintiff, filed in the district court of La Plata county his complaint against The Green Mountain, Mining and Milling Company, as defendant.   Among other things this complaint states, that the defendant is the owner and in possession of sundry mining properties, etc., in San Juan county of a value in excess of $1,-000,000.00; that it has heretofore been engaged in operating these properties, etc.; that it has issued $600,000.00 of interest-bearing bonds, secured by mortgage upon its property; of

these $160,000.00 is an outstanding indebtedness; that $440,-000.00 of the bonds are held as collateral security for the payment of $290,000.00 of other indebtedness of the defendant; that it has a floating indebtedness of $460,000.00 now due and payable; that six months' interest on the $160,000.00 bonds aforesaid is past due and unpaid; that the plaintiff is the owner of 120 shares of the capital stock of the defendant; that the defendant is indebted to him in the sum of $560.00 for salary as secretary and treasurer; that in addition thereto he holds two notes of the defendant for $2,000.00 which are long past due; that defendant is wholly unable to pay the principal or interest on its bonds or any of its indebtedness as the same matures or has matured; that its property is subject to judgments, executions and attachments at the hands of its numerous creditors; that suits have been brought against it by its creditors in Pennsylvania and Colorado; that if receivers are not appointed, the defendant will be subject to a multiplicity of suits and litigation of various sorts in Pennsylvania, Colorado and elsewhere; that its assets will be dissipated and sacrificed; that certain creditors will secure a preference over others; that its property will be taken upon execution and sold piecemeal; that its property will be greatly dissipated, diminished, impaired and wasted; that if the interest on its bonds be not paid the holders will declare default, and proceed to foreclose their mortgage; as a result the bondholders will secure a preference over the unsecured creditors and all the property will be consumed in the satisfaction of the indebtedness secured by the bonds; that if the assets of defendant are not sacrificed by forced sales in the threatened litigation, they are far in excess of the liabilities of the defendant, and if properly administered will pay all its debts, and leave a substantial residue for its stockholders; that the procuring of a comparatively small amount of money will permit the operation of the mines and plant of the defendant; that if defendant is enabled to again resume operation of its property, it can eventually

discharge and pay its indebtedness without sacrifice of its property. This is followed with detailed statements how this can be accomplished. It is alleged that the taxes for 1910 are unpaid, and the result which will follow if not arranged for. It states that the plaintiff is informed and believes that the defendant will be able to procure funds sufficient to accomplish the results above indicated, if given a reasonable period to do so before there is foreclosure and forced sales of its property. This is followed with detailed information as to how this is to be done, with the further allegations that unless the court assumes jurisdiction and appoints receivers the claims of all unsecured creditors will be ultimately lost, as well as great damage to the secured creditors and stockholders. It is also alleged, that in a United States court in Pennsylvania receivers have been appointed and have proceeded to take charge of the assets of the company in that state; that in that action the company by answer admitted the allegations of the bill which were, to a certain extent, the same as those contained in this complaint. The prayer is for judgment against the defendant for $2,512.00 and interest, for the appointment of receivers with detailed authority, and that the officers and agents of the company be compelled to turn the property over to them, and that all creditors be enjoined from instituting suits or attempting to enforce collections, other than through the receivership, etc., and for general relief.

Upon the same day the defendant company purported to file its answer in which it admits the truth of the allegations contained in the complaint, and consents to the appointment of receivers. Three receivers were appointed upon the day the complaint and answer were filed; they therafter qualified and took possession of the property and it appears have thus continued under the orders of the court.

Upon February 8th, 1911, the court, upon its own motion, transferred the cause to San Juan county, it appearing that it was one affecting both real and personal property situate in that county.

On March 1st, 1911, these petitioners, Joseph G. Butler, Jr., and C. A. Ferguson, tendered for filing in the action above referred to their verified petition for intervention wherein they allege, among other things, that they were not served with notice, and had no knowledge of the appointment of the receivers until February, 1911; that the Pennsylvania court was without jurisdiction in the premises, and that the appointment of receivers there, as well as here, was without notice, except to one DeArmit, who claimed to be the president of the defendant company, and one Ralph Hartzell, attorney, who assumed to file an answer for the defendant; that the company is indebted to Butler in the sum of $23,625.65 with interest upon certain notes, describing them, also, an additional $5,-000.00 furnished as a loan which is long past due; that he is a large stockholder, owning 204,000 shares; that Ferguson is a creditor and upon January 21st, 1911, obtained a judgment for $3,500.00 with interest, against the defendant in the courts of Pennsylvania; that Ferguson is a stockholder owning 135,420 shares; that a large majority of the stockholders and creditors are opposed to the appointment of receivers either in Pennsylvania or Colorado; that it appears on the face of the bill in this suit that this court was without jurisdiction to appoint receivers; that there is no equity in the bill (this is followed with detailed reasons attempting to thus show); that Ralph Hartzell purporting to answer for the defendant had no authority to represent it; that there was no proper notice given to the company nor any notice given to the stockholders, creditors or bondholders; that the complaint fails to state a cause of action; that the appointment of receivers is not in the interest of the stockholders, etc.

The prayer is for permission to intervene and become defendants, to include such other stockholders and creditors as desire to join them, that they may be permitted to file a motion to vacate the order appointing the receivers, to demur to the bill, or otherwise plead.

This petition was duly considered by the court and after arguments ,on March 11th, 1911, the court declined to allow the petitioners to intervene. No exceptions appear to have been taken to this ruling, and nothing further appears to have been attempted by these petitioners until January 6th, 1912, when they presented to said court another petition for intervention in said action. This petition sets forth a copy of the former one with a statement of the disposition thereof. In addition to the allegations contained in the first petition, which are reiterated in the second, other matters are alleged, some of which are, that the decision of the judge in refusing to allow the petitioners to intervene upon their former petition was largely based upon the fact that at the time of the appointment of receivers it was represented to the judge if he appointed the receivers that one William P. DeArmit and his associates would, within a very short time, raise the necessary funds to pay the pressing debts of the defendant company, and also sufficient other money to develop and improve its properties, and to enable it to work and operate them and make it a going concern; that upon account of these promises the judge appointed the receivers; that more than ten months have elapsed since the appointments, but that no part of the pressing, or any debts of the company have been paid; that no improvements have been made upon the property since that time, and in fact nothing has been done to relieve the company from its financial embarrassment, or to put its property in a condition to work and operate, but, on the contrary, a large amount of additional indebtedness has been incurred since the appointments; that the petitioners have used every diligence to intervene; that after the decision refusing to permit the petitioners to intervene, they were advised and verily believe that it would not be proper, and in fact would be unavailing, for them to attempt to intervene until a reasonable time has elapsed for the fulfillment of the promises said to have been made on behalf of DeArmit as hereinbefore stated; that when

the representations were made to the judge, as aforesaid, that the indebtedness of the defendant company would be paid or substantially reduced, and provisions made for working the properties, etc., the said DeArmit was then and has ever since been insolvent, and was and is entirely without means of his own, and without ability to raise money from other sources, for the use of the defendant, or in fact to do anything of a substantial character to relieve the defendant company of its financial embarrassment; that Dick was an employee of De-Armit, and sustained the closest confidential relation to him; that Dick was and is one of the smallest creditors; that Dick, DeArmit and others conspired and confederated together for the purpose of obtaining the appointment of receivers, in order to prevent the creditors from collecting their just claims, so that Dick, DeArmit and others might, through said receivers, obtain more complete control of the property of the defendant, for the purpose of harrassing and annoying the creditors, and the majority of the stockholders, to the end that the creditors would compromise their indebtedness against the defendant company for a small per cent.; and that the stockholders would part with their stock for a trifling amount, and thus enable the said DeArmit, Dick and others in such conspiracy to obtain ownership of the property without paying any substantial amount therefor; that Dick, DeArmit and others, claiming to be the directors of the company, prior to the appointment of receivers, attempted to reduce the capital stock from $3,000,-000.00 to $1,250,000.00.   Then follows a history of this transaction whereby it appears all the stock of the corporation was turned over to certain trustees, in which manner it is alleged that DeArmit and his associates had controlled the affairs of the company against the interest of its creditors and those owning a majority of its stock.

Other allegations are set forth pertaining to the history of the defendant company and the alleged fraudulent acts of Dick, DeArmit and others in connection with its management.   The prayer is the same as in the former petition.   The

court, upon January 6th, 1912, after considering the application and hearing the arguments of counsel, ordered that the application and petition be denied. Thereupon, the petitioners offered for filing a motion to vacate and set aside the order made January 7th, 1911, appointing receivers. The court refused to allow this motion to be filed. Mr. Ferguson then presented for filing a demurrer to the complaint. This was likewise refused. The petition praying for the writ of prohibition was filed in this court upon November 22nd, 1912.

. The contentions of the petitioners are that while the court had jurisdiction to entertain the action proper, which they claim is a suit upon notes, and for services rendered, it was without jurisdiction over the property of the corporation attempted to be covered in that portion of the petition setting forth alleged reasons for the appointment of receivers; that if this position is wrong and the court had jurisdiction to pass upon the question, that when the allegations of the petition are considered, it fails to disclose facts sufficient to justify the court in its appointment of receivers and in so doing it exceeded its legitimate powers; that by presenting their petition for intervention with these reasons therein stated they gave to the trial court an opportunity to correct its erroneous ruling in this respect, which it declined to do, and that this is sufficient to give them the right to petition this court for the writ of prohibition therein, although they have not yet become parties to the action, and that they have no plain, speedy and adequate remedy at law to protect their rights in the premises.

This court has universally held that a writ of prohibition is not a writ of right, but rests in the sound discretion of the court.—*Leonard v. Bartels,* 4 Colo. 95; *People ex rel. v. District Court,* 6 Colo. 534; *McInerney v. City of Denver,* 17 Colo. 302; *People ex rel. v. District Court,* 19 Colo. 343; *People ex rel. v. District Court,* 21 Colo. 251; *People ex rel. v. District Court of Lake Co.,* 26 Colo. 386.

For the reasons hereinafter stated, we are of opinion that upon account of the acquiescence and laches of the petitioners,

this court ought not to entertain this application. This makes unnecessary any consideration of the many intricate questions presented.

It will be observed, that the receivers were appointed February 7th, 1911; that upon March 1st, same year, the petitioners tendered for filing their first petition of intervention. This was denied upon March 11th, following. Nothing further was done by them until January 6th, 1912, a period of approximately ten months, when they filed another petition to intervene, wherein they set forth, in substance, as excuses for delay in its presentation that they have abandoned any right to stand upon their former petition, and acquiesced in the appointment of the receivers for the reason, as they allege, that it was represented to the court at the time of the appointments that within a very short time funds would be raised by those who desired the appointment of receivers sufficient to pay the pressing debts of the defendant company, and also to develop and improve its properties and to enable it to work and operate them and make its plant a going concern, and that the court's decision in refusing to allow them to intervene was largely based upon these promises, but that during these ten months nothing had been done in this respect to relieve the company from its financial embarrassment, or to put its property in a condition to work and operate, but; on the contrary, a large amount of additional indebtedness had been incurred, etc. In other words, they said to the court that while we did not approve of the appointment of receivers and thought you were without jurisdiction in so doing, and we thus stated in our first petition for intervention, yet upon account of the promises made to you that the emergency debts of the corporation would be paid, and sufficient other funds arranged for to make the defendant's business a going concern, we acquiesced therein, and said nothing further for a period of ten months in order to see if such arrangements would be carried out by that faction of the stockholders of the defendant who desired and secured the appointment of the receivers. To put it in another

way, it was to say that if things work out all right, and to our advantage, we acquiesce in the appointment of receivers; but if they go wrong (although we have not said so, and will not until it is necessary to act), it is our intention when it is thus ascertained, to again object to the appointments, and challenge the jurisdiction of the court to make them. Such action upon behalf of the petitioners was unquestionably an acquiescence in the appointment of the receivers and in their handling of the property during the ten months following their appointment.

The second petition for intervention was presented January 6th, 1912, and by the court acted upon and refused the same day. The petition for the writ of prohibition was filed in this court November 22nd, 1912. It fails to give any excuse or reason why it was not applied for until over ten months after the district court for the second time had refused to grant the relief prayed for.

Regardless of whether the case is of such importance as the petitioners claim, we are of opinion that their actions as above stated, during the ten months after these appointments were made, present a case of acquiescence during that period and that their delay for the ten and a half months thereafter, before making application here for the writ of prohibition, presents a case of laches and when both are considered they are sufficient to justify this court in refusing to consider the questions raised pertaining to the merits of the controversy under its extraordinary jurisdiction by writ of prohibition.

While it is claimed that the petitioners (by presenting their petition of intervention) gave to the trial court an opportunity to pass upon the question of its jurisdiction to appoint receivers in an action to which the petitioners were not then parties (a question unnecessary to determine); it is conceded the only thing that the court did pass upon was their right to intervene. Its refusal was such a final judgment against them to which a writ of error will lie.—*Henry v. Travelers' Insurance Co.,* 16 Colo. 179; *Curtis v. Lathrop,* 12 Colo. 169; *Limberg v. Higginbotham,* 11 Colo. 316; *Harman*

*v. Barhydt*, 20 Nebr. 625; *First Nat'l Bank v. Gill & Co.*, 50 Iowa 425; *Nat'l Distilling Co. v. Seidel*, 103 Wis. 489.

Had a writ of error been promptly sued out upon the court's first refusal to allow the petitioners to intervene, the matter could probably have been reached and disposed of *in* the regular manner by this time. Whether the petitioners had the right to present a second petition to the court, raising the same contention, with the further statements that the appointment of the receivers had not proven successful or accomplished what was promised, is unnecessary to determine. They elected, as they say, after the first refusal, to take their chances, and had the appointments brought the results alleged to have been promised, it appears they would have been satisfied and continued to acquiesce in the jurisdiction of the court, but inasmuch as they did not work out as they alleged was promised, they now desire to have the question determined in this extraordinary manner. Under such circumstances the application ought not to be entertained.

For reasons stated the alternative order and rule will be quashed and the writ denied.

*Application denied.*

Decision *en banc*.