### No. 10,661.

THE PEOPLE, EX REL. CLAY, ROBINSON & CO. *v.* DISTRICT COURT OF THE TWELFTH DISTRICT, ET AL.

Decided July 2, 1923.    Rehearing denied October 1, 1923.

Original proceedings in prohibition.

### *Writ Denied.*

1. APPELLATE PRACTICE—*Prohibition.* Prohibition is not a writ of right, but rests in the sound discretion of the superior tribunal.

2. PROHIBITION—*May not Take the Place of a Writ of Error.* A writ of prohibition will be denied when a writ of error would furnish an adequate remedy, and all material questions could be reviewed, and all substantial rights protected thereunder.

3. *Failure of Petitioner to Act Promptly.* A writ of prohibition will not issue when the petitioner has failed to act with reasonable promptness; and where the petitioner delayed action for a year, it is held, that even if entitled to the writ when the emergency arose, the petition came too late.

4. *Estoppel.* A writ of prohibition will not issue to relieve the petitioner from difficulties of his own creation.

5. DEPOSITS—*In Registry of Court—Security.* Where an order of court is to be entered requiring the deposit of money in the registry of the court, greatly in excess of the official bond of the clerk, the deposit should be safe-guarded by sufficient surety,

and the clerk should exercise a like protection as to the principal and interest.

### Original Proceeding.

Mr. P. A. WELLS, Messrs. HODGES, WILSON & ROGERS, Mr. A. L. MOSES, Mr: HENRY C. VIDAL, for relators.

Mr. JESSE STEPHENSON, Mr. RALPH L. CARR, Mr. L. F. TWITCHELL, Mr. J. T. ADAMS, Mr. J. D. PILCHER, Mr. CHARLES H. WOODWARD, for respondents.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS is an original proceeding in prohibition. It is before us now on an alternative writ, returns thereto, and demurrers and answers to the returns.

Relators claimed a mortgage on 50,000 head of sheep and increase given by one Jordan, now deceased, and whose estate is insolvent. Having filed their claim for the debt and had it allowed by the administrators, they petitioned the county court, under section 5344, C. L. 1921 (L. 1917 chap. 99 p. 391), for leave to foreclose and at the same time asked that because of the disqualification of the county judge the petition be certified to the district court as in such case provided. The certification followed. Other mortgagees, claiming part of the same property, filed like petitions. Objections to the foreclosures were filed by other creditors and the administrators. In the same court certain replevin suits were pending involving some of the same animals. Said suits were tried, brought here on error, and are this day decided. Therein the claims of certain of the plaintiffs as against relators are upheld.

October 6, 1921, a "consent order" was entered which reads in part as follows:

"It has been, and no doubt will be, impossible to agree upon, establish or settle said respective claims other than by litigation, but all parties realize that it will be improvident, expensive and to the detriment of all claimants and all parties concerned to hold said sheep, pending the set-

tlement of said contests and claims; all of which are in dispute, and that it is advisable to sell and dispose of said sheep to the end that the expenses incident to keeping the same may be stopped.

Clay, Robinson & Company claim to be in the possession of said sheep and their increase and as large dealers in sheep claim they are in a better position than the other claimants to sell the same, and have expressed their desire and willingness to do so and become personally responsible to each and all for any and all claims that such claimants or any thereof may legally establish to said sheep, or any part thereof, which is superior and paramount to their lien thereon and claim thereto, and also agree to be personally responsible to said estate and other claimants respectively if rights superior to said Clay, Robinson & Company are legally established to said sheep without either or any of the parties hereto conceding any rights of each other in or to said sheep, or any part thereof, or upon the part of any other claimants, and without any party hereto waiving or releasing any of their respective rights or claims, and at all times reserving to each of the parties hereto the right to contest each and every claim of the other.

It is therefore ordered and adjudged by the court: That without conceding or waiving any claims or rights, that Clay, Robinson & Company may sell and dispose of, the ewes and lambs for the best price obtainable which they now claim to possess and control  *  *  *  but in so selling the same the said Clay, Robinson & Company shall become responsible to whomsoever shall establish a claim to said sheep, or any part thereof, superior to the lien and claim of the said Clay, Robinson & Company for such or all of said ewes and lambs to which claim shall be established as against said Clay, Robinson & Company by said estate or by any claimant thereto, at the price for which said sheep are so sold by said Clay, Robinson & Company, together with interest thereon at eight per cent per annum on said sale price from the date of said sale until said claims or right may be established;  *  *  *.   Provided, further,

that if it shall be finally determined by any court of last resort to which it may be appealed, if so appealed, that the mortgage claimed by said Clay, Robinson & Company is invalid, then and thereupon the proceeds of such sale, less the amount determined to be due Clay, Robinson & Company, shall be with reasonable promptness paid by them into the registry of this court with interest as aforesaid to abide the orders of this court and for the use of the party or parties lawfully entitled thereto.  *  *  *

It is specifically ordered that none of the parties hereto shall be held to have waived, relinquished or released any rights in or to said sheep which they now have or claim to have, as the purpose of this order is to curtail and stop the expense of running said sheep and prevent delay in the sale thereof, and to convert the ewes and lambs into money and funds to be held by said Clay, Robinson & Company and to allow all claimants to proceed with any claims which they may have to said sheep as in conversion against said Clay, Robinson & Company and upon any recovery being had, said Clay, Robinson & Company shall pay such claimant, so recovering, the amount received for said sheep so recovered,  *  *  *.

In allowing said Clay, Robinson & Company to make such sale it is not decided that Clay, Robinson & Company have any valid mortgage or lien against said sheep, nor shall this order in any way interfere with or prevent any or all parties contesting the validity of the said so-called mortgage or the validity of any other mortgage or claim made by any party hereto or by any other party, and none of the parties hereto shall be entitled to a plea of res adjudicata by reason of the making of the terms of this order.

This court shall retain jurisdiction of the above and foregoing matters for the purpose of making such other and further orders and decrees as shall or may be necessary in the premises.

The validity of the mortgages and claims herein referred to are not determined by this order, but are to be determined the same as if this order had not been made.

That said Clay, Robinson & Company shall within a reasonable time make due report to the court of their acts and doings in the premises relative to the sale of said sheep."

That order was consented to in open court by relators and approved by them in writing. The approval of the administrators was conditioned upon relators giving bond for their compliance with the terms thereof.

February 28, 1922, relators reported sales under said consent order and receipts therefrom of $166,762.39. April 25, 1922, the court held that report insufficient, and granted time for a supplemental report. April 26, 1922, relators were ordered to give bond in the sum of $150,000 conditioned that they should "promptly and faithfully account for and pay into the registry of this court all money or moneys that they may be required to pay under any order or orders of this court. Said bond or bonds shall contain a copy of this order to be made a part thereof."

May 17, 1922, a bond was filed and approved by the clerk. June 28, 1922, the administrators moved to set aside that approval as unauthorized because the bond did not comply with the order and to require relators to deposit in court the proceeds of the sale. April 27, 1923, the court ordered said proceeds paid in by May 7, 1923, reserved ruling on the motion to set aside the clerk's approval, and set the cause for hearing May 4, 1923, on the motions for leave to foreclose. May 2, 1923, this petition for prohibition was filed, alleging as grounds for issuance of the writ that the district court was without jurisdiction and was exceeding its jurisdiction. Written briefs have been filed and oral arguments heard.

Much has been said here on the merits of the controversy and the question of jurisdiction. In our opinion neither need be considered as the cause must be disposed of under four elementary principles of such general application as to require no citation of authority in support thereof: 1. Prohibition is not a writ of right but rests in the sound discretion of the superior tribunal. 2. It will not be permitted to take the place of a writ of error. 3. It will not

issue when the petitioner has failed to act with reasonable promptness.   4.   It will not issue to relieve a petitioner from difficulties of his own creation.

1.   Not being a writ of right we look to the other rules above enumerated for a guide for the exercise of our discretion.

2.   When the money is paid into court it will stand in lieu of the property, and the bond, if any there be, will become *functus officio*.   If upon hearing in the court below judgment goes against relators, and they take proper steps to protect their rights, the fund can not be paid out until that judgment can be reviewed here; hence a writ of error furnishes an adequate remedy, and all material questions can be reviewed and all substantial rights protected thereunder.

3.   If the trial court is acting without or in excess of its jurisdiction, that action dates at least from the entry of the order of April 26, 1922, for the giving of the bond. The purpose of that order, and the jurisdiction of the court to enter it, were identical with the purpose and jurisdiction to enter the order of April 27, 1923, to pay into court the proceeds of the sale; hence relators delayed application for the writ for a full year after they, if ever, were entitled thereto and after the emergency, if any, arose.

4.   Relators by their representations were instrumental in bringing about the entry of the order of October 6, 1921. Whatever benefits they could obtain therefrom have accrued.   They now contend that said order was an adjudication of their right to foreclose, that their sale under it was a foreclosure and that the court's jurisdiction in the premises was thereby terminated.   But relator's consent goes to every provision of the order of October 6, and contrary to the express prohibition thereof they now seek to avail themselves of a plea of res adjudicata based thereon, and deny the continuing jurisdiction reserved therein.   Whatever may be the merits of their contentions and whatever relief they may be entitled to on writ of error, prohibition will not issue to extricate them from a situation in which

they have been placed, not only by their own consent, but by their specific request.

Relators protest that they have been at considerable expense in procuring the $150,000 bond above referred to and in caring for and selling the sheep in controversy, all of which they stand to lose if the writ is denied. In this connection it seems proper to note that whether said bond complies with the order therefor is yet to be determined by the trial court. If it does not relators can not complain. If it does we doubt not the court will deduct the expense thereof from the amount they are required to deposit. The same is true of expenses incurred by them under the order of October 6, 1921. We can not presume that the district court will ignore either the law or the facts in relation to these or any other matters and upon such presumption prohibit further action.

The sum here involved is so greatly in excess of the usual bonds of our clerks of the district courts (i. e. $5000) that the trial court, before the deposit is required, will of course see to it that it is safeguarded by good and sufficient surety, and the clerk will exercise a like precaution as to both principal and any interest obtainable while it is in the registry of the court.

For the foregoing reasons the writ is denied and the cause dismissed with costs to respondents.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE DENISON dissent.

MR. JUSTICE ALLEN not participating.

MR. CHIEF JUSTICE TELLER dissenting:

The application for leave to foreclose the chattel mortgage without suit, having been certified to the district court, that court had jurisdiction only to pass upon that question. The debt secured by the mortgage having been allowed by the county court, the statutory condition upon which the right to foreclose existed had been complied with. There was nothing for the court to do but grant the per-

mission.   Anything further done in the cause was done
without jurisdiction.   That the district court, in causes
transferred to it from the county court, has only such juris-
diction as the county court possessed as to the cause, is
not open to question.

It appears from the record that several parties claiming
title to, or liens upon various numbers of the sheep which
the mortgagee claimed were covered by the mortgage, filed
objections to the permit, and set up their claims, apparently
for determination, in the certified cause.

On October 6th, an order was entered, with the approval
of all the parties, providing for the sale of all the sheep
claimed to be held under the mortgage, for an accounting
for the proceeds of the sale, and the holding of the funds
by the mortgagee; the rights of the other claimants to be
established by suits as in conversion.

The court set for hearing the matters contained in at
least one of the protests or objections, the trial of which
involved the question of liens as between that party and
the relators.   Relators now seek to prohibit the further
proceedings in the transferred case, on the ground that the
court is acting without jurisdiction in trying questions of
liens, etc.

The majority opinion holds that we ought not to grant
the writ to prohibit what the relators have agreed might
be done.   That is to say, the parties having consented to
the exercise by the district court, acting *pro hac vice* as a
county court, of authority denied to it by the Constitution
and the laws, we ought not to interfere.   This would seem
to be a novel application of the doctrine of estoppel, since
the result is that the parties may, by consent, confer juris-
diction, unless this court takes action to prevent its exer-
cise.   Ordinarily a litigant is not permitted to base an ob-
jection on any action of the court to which he has consented,
but certainly this rule cannot apply where the consent was
to do an act which the Constitution prohibits.

If the position of the majority of the court is correct
this court, because of its having discretion in such cases,

may nullify an express provision of the Constitution. The discretion which we may exercise is, of course, a legal one, and not one which leads to approval of a violation of the Constitution. Whenever, in a case like that before us, it appears that a court is acting or threatening to act without or in excess of jurisdiction, we are not permitted to consider the merits of the original case, the action of the parties to it, or anything except the one question of jurisdiction. We have no discretion as to the recognition of constitutional provisions, and our discretion is to be exercised only upon such matters as pertain to procedure, the probable effectiveness of the writ, and kindred subjects.

As no action by the parties can confer jurisdiction, delay on the part of the relators can be no ground for denying the writ. The writ should issue.

MR. JUSTICE DENISON dissenting:

I concur in the conclusion of the Chief Justice and partly in his opinion, but do not think it necessary to elaborate the reasons therefor.