## No. 11,375.

JAMES ET AL. *v.* JAMES, EXECUTRIX.
(32 P. [2d] 821)

Decided February 26, 1934.  Rehearing denied April 30, 1934.

1

2

Mr. JOHN T. BOTTOM, Messrs. GRANT, ELLIS, SHAFROTH & TOLL, for plaintiffs in error.

Mr. ERNEST MORRIS, Mr. C. E. WAMPLER, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

ON consideration of application for rehearing filed by plaintiffs in error, petitioners, we adhere to the view, which without written opinion we previously announced, but that the determination may be informative we now set out the reasons which prompted our judgment.

The matter is here on a "petition," filed by plaintiffs in error, bearing caption and number of, and in, a case determined on review January 28, 1929. *James v. James*, 85 Colo. 154, 274 Pac. 816. The prayer of the petition is that this court "resume jurisdiction in this cause, and

make an order advising the district court to proceed no further in this cause until further order herein. And may it be held that Judge Herrick was without jurisdiction to appoint a referee and that the acts and doings of the referee were without jurisdiction or authority, by reason of the fact that Judge Herrick had theretofore disqualified himself from proceeding in any manner in said cause. And may plaintiffs in error have any and all other relief to which they may be entitled." May 25, 1933, preliminary order made as prayed. June 3, 1933, defendant in error made answer and return, to which June 19, 1933, plaintiffs in error filed reply. Neither the court nor the judge was made party, and no appearance has been made by either. Relief is not sought against defendant in error, as such.

In the review mentioned, besides ordering an accounting, we made the following disposition of the claim of defendant in error that the plaintiffs in error were estopped: "There is force in this contention," we said, "but in the state of the record we do not think the estoppel operates. There is confusion in the record, and doubt in our minds, as to whether plaintiffs knew from what source the money which was distributed to, and received by, them, came. And there are other uncertainties about the showing in that behalf not necessary to mention. We think that matter should be left to the trial court when the cause is remanded, to conduct a hearing and make findings of fact and a judgment with respect to this money which has been paid to them, and to frame, or cause to be framed, the appropriate issues in that particular and upon the evidence produced make the appropriate findings and enter a judgment or order with reference to this matter. This hearing may be had in connection with, and as part of, the accounting demanded and to which plaintiffs are entitled."

It appears that the case was remanded April 22, 1929, and set for trial August 26, 1929; that some time prior to the latter date, counsel for plaintiffs in error wrote to

the judge of the trial court that his clients would make application to disqualify him, the judge responding that he would call another judge, thus obviating necessity of a showing; that at the time appointed for the trial counsel for both parties were present, and certain proceedings were had and orders made. We quote or substantially state pertinent portions of the record.

"The Court: The matter set for trial at this time is this case No. 145 James, et al., vs. James. I have a letter which was written by Mr. Bottom, and filed in the files of the case, stating that there would be an application to disqualify me. I advised Mr. Bottom that it would not be necessary to file affidavit, and that I would call another Judge, which I did." The court then stated that he had secured a judge, as the understanding was, but when too late to obtain the services of still another judge, the court was advised of the sudden illness and inability of the judge who had promised to come, to attend.

"I have given the matter some little thought since," continued the court, "and it is my idea that if you gentlemen are here, ready to proceed, that this being an accounting case, I am satisfied to appoint a referee, who is an attorney in Craig, and I believe that he is available, who has never been in the case in any way, in order that the testimony may be taken at this time, and then the findings and report of the referee can be submitted to some other Judge, perhaps some Denver Judge, for the convenience of counsel, both of them being Denver counsel, and in that way save you people the expense of another trip over here. Now if that is satisfactory, I will be glad to do it. I have in mind Judge Meador; I will appoint J. F. Meador, a man who for three or four years has been County Judge, and I believe, having had that experience, he will be able to qualify as referee.

"Mr. Bottom: May it please the court, since I learned on Saturday that the other judge would not be here, I would not be prepared to put in all the evidence this time, because I would have to have Mr. Spruill, the Re-

porter, here, and also some other testimony which I otherwise would have had; witnesses whom I thought on Saturday night might be important to me—the testimony of one or two witnesses—and I have no doubt those witnesses can be here later, prepared to appear before a referee or the Judge who will try the case, and, we wish also to call Mr. James. While the inconvenience is very great, I would not want to go ahead today with the expectation of finishing the testimony at this hearing. I was thinking this, that if Judge Finnicum is able in the next week or two, we might take the matter up with him then.

"The Court: At the time I got Judge Finnicum to say he would come, he told me he had this week available, and he did not think of any other time he could give me than this week. That being the case, I perhaps would have to seek elsewhere to get some judge to try the case. If that is not satisfactory we will simply set the case over to some future time, far enough to assure that I will be able to get another Judge. If you want to go ahead, I will be glad to appoint the referee and take Mr. James' testimony, to save him coming back from Chicago, but that is entirely up to you. I have no feeling or desire, one way or the other, I simply want to do the best I can for the convenience of counsel, witnesses and others.

"Mr. Bottom: If Mr. Morris has any witnesses whose testimony he wants to take, I will be glad to take it, but we could not finish the case now."

Thus far only the court and counsel for plaintiffs in error, petitioners here, had participated. The court, in what bears every evidence of a kindly, gracious and helpful spirit, was indulging a suggestion which promised progress in a case that otherwise would be postponed indefinitely. Counsel for plaintiffs in error—and his clients were the ones interested in celerity of action—apparently acquiesced in the plan which the court offered, his only concern being that some of his witnesses were not present, and did not "want to go ahead today with

the expectation of finishing the testimony at this hearing" From what we have quoted from the judge's remarks following counsel's first statement; it is clear that the court was submitting the problem interrogatively, offering to the parties choice of awaiting the uncertain time when the services of another judge could be secured, or proceeding before a referee. The clear intendment of counsel's reply to the court, as we interpret the record, was that, other than emphasizing the need of postponement before the referee as to any witnesses not then available, the court's offer to appoint a referee met with his approval.

At this point counsel for defendant in error stated that he would seek consideration of what he said was a federal question—previously urged on rehearing in the review culminating April 22, 1929—and was ready to frame pleadings on question of estoppel, as directed by this court, and said: "I will be perfectly willing to take up those matters I refer to before a referee, if your honor cares to appoint a referee, and with those limitations it will be perfectly satisfactory to us to take it up in that way, but I do not think we should be put to the expense and inconvenience of returning at some uncertain and subsequent time if the matter can be proceeded with at this time, because we are anxious and desirous to go ahead.'' We' think this statement of her counsel committed defendant in error to the referee method of procedure, already acquiesced in, as we have seen, by plaintiffs in error. But before the court could speak, seemingly in order, counsel for plaintiffs in error, as if replying to what we have just quoted from opposing counsel, but still voicing no objection to the appointment of a referee, said: "Now, may it please the court, this is the first advice I have had that counsel expects to frame additional pleadings in addition to those already before the court. If you desire to take up those additional matters counsel refers to, I will be glad to take them up that way, but, from the point of inconvenience and expense,

I will say I am here from Denver since last Wednesday. The question raised is an important one.''

As we view the record, the court was justified in concluding that as a proper and desirable means to immediate progress in the case, not otherwise possible, the parties were agreeable to the appointment of a referee. The court then made the appointment, saying: ''I believe I will appoint Mr. Meador referee in the matter and let you proceed. Mr. Meador, being an attorney, you can take up preliminary matters with him.'' Neither party uttered a protest or asked for an exception. However, after counsel for defendant in error had discoursed somewhat further on what he conceived to be the powers of the referee, and emphasizing again the holding of this court on the question of estoppel and the manner in which it could be presented, reading from the opinion what we have already quoted on the subject, the judge interjecting that he had not recently read the opinion, counsel for plaintiffs in error said: ''We certainly object to the appointment of a referee. I think the appointment of a judge of experience to hear these particular questions should be made.'' The judge responded that ''I have already appointed a referee,'' to which counsel said, ''We note an exception.''

Thereupon the court called the referee to the court room, telling him of his appointment, stating: ''I have appointed you as referee in the James case, for the reason that, primarily it is an accounting matter. There are, however, certain other matters which may be brought up before you preliminary to the accounting, and I have tried to frame the order appointing you that you will be empowered to take up these preliminary matters.'' After making some observations in relation to the compensation of the referee, and saying he would consult the statute, the judge inquired, ''Now, is there anything else you want me for at this time?'' Counsel for defendant in error spoke further of the powers of the refreee, concluding with the statement: ''I think the

statute probably covers that." The judge responded: "I believe it does." Counsel for plaintiffs in error said: "We note an exception to the further order of the court," to which the judge made answer, "I did not make any further order. The referee will take charge of this case and have the right to determine these questions. The judge will not be here." Counsel for plaintiffs in error said, "We further object."

The record from this point has to do with what occurred before the referee. When the referee inquired of the parties if they were "ready to proceed now," counsel for plaintiffs in error said he was not ready, because when he learned that the judge selected to try the case could not be present, he had refrained from "obtaining the attendance of certain witnesses who are important," and urged that the presiding judge, having disqualified himself, the referee, appointed by the judge, was without jurisdiction to proceed. The referee made no response, but counsel said, "We note an exception." Then followed a long colloquy, involving the procedure necessary to present the issue of estoppel, coupled with insistence of counsel for defendant in error that he wished the record to show that he had not abandoned the federal question to which there had been previous reference, and opposing counsel's observation that "We will meet the question whenever it comes." The referee said: "Now my views are that the decision of the Supreme Court will be the law controlling this hearing, and we will proceed according to that, and we will proceed along the lines of the issues as framed in accordance with the opinion of the Supreme Court."

It then appearing that issues as to the estoppel had not been formed, and that defendant in error was ready to file her pleading in that regard, the referee ordered that the parties frame their pleadings in accordance with the decision of this court. The pleading offered by defendant in error was filed, whereupon counsel for plaintiffs in error asked for ten days within which to answer. A long

argument ensued, counsel for defendant in error insisting that the issue was simple, and that the case ought to proceed at once. The referee was disposed to take that view, and suggested the importance to all concerned to make progress. In the end, however, counsel for plaintiffs in error prevailed and the time asked for was granted, the hearing generally being continued to October 9, 1929. On the adjourned day and the two following days, issues on the question of estoppel having been framed in the meantime, evidence was taken by the referee thereon. The referee ruled adversely to defendant in error in the matter of the claimed estoppel, and upon such announcement her counsel stated he was ready to proceed with the accounting issue. Counsel for plaintiffs in error said he was not ready, and on his motion the referee continued the further hearing to November 4, 1929, when, and for five succeeding days, the referee heard evidence on the accounting. April 2, 1930, the referee filed his report, accompanying it with a transcript of the proceedings before him. Both parties filed exceptions to the findings of the referee. April 7, 1930, the judge of the court notified counsel that on April 24, 1930, Mr. Justice Bouck, then a district judge, would attend and hear them on their exceptions. Counsel for defendant in error advised that it seemed likely he could not reach Craig until the evening of the day appointed, but that he would be ready to present the matter that evening or the next morning as would suit the convenience of the judge who was to preside. Counsel for the proponents of the accounting, however, notified the judge that he would not be ready; and so the hearing was not had.

It further appears that in December, 1932, the case having stood unnoticed on the exceptions to the referee's report, and for final orders, since April, 1930, the court, actuated, we properly assume, by the desire to clear its docket of what seemed a forgotten case, directed the clerk to advise counsel that progress must be made in the matter on or before May 22, 1933, the first day of the next

10

regular term. In response to this reminder counsel for defendant in error served opposing counsel with notice that on such day he would apply to have the exceptions to the report of the referee heard and determined, while counsel for plaintiffs in error responded by filing in this court, some four days before the convening of the term mentioned, the petition which now claims our attention.

Inasmuch as the petition does not name the writ sought to be invoked, we have been to pains of inquiry. Analysis of the prayer, and only there may be found indication of the purpose of the petitioners, leads us to conclude that prohibition must have been in mind. We are asked to "resume jurisdiction," hold that the judge of the trial court was "without jurisdiction," and "to advise such court to proceed no further." When we issued our mandate, April 22, 1929, jurisdiction of the district court was restored. *Norris v. Kelsey*, 60 Colo. 297, 301, 152 Pac. 1167. Upon restoration of the trial court's jurisdiction, ours was terminated. 4 C. J. 1244; 2 R. C. L. p. 265, §217; *James v. Railroad Co.*, 123 N. C. 299, 31 S. E. 707; *Moe v. Goodroad*, 45 S. D. 271, 186 N. W. 967; *State Bank v. Mackley*, 118 Neb. 734, 226 N. W. 318. Of course, if through inadvertence, fraud or mistake, the mandate is not as was intended, then there may be recall of the writ. 2 R. C. L. p. 265, §217. No such claim is made here, and the record discloses nothing of the kind. The circumstances considered, only prohibition may be said to come within the purview of the petition. We make determination on that theory.

Two considerations seem to preclude us from granting the writ. First, necessary parties respondent, namely, the court sought to be restrained and the judge thereof, are not here. 22 R. C. L. p. 28, §28; 50 C. J. p. 699, §103; *State v. Superior Court*, 40 Wash. 555, 82 Pac. 877, 111 A. S. R. 925, note d, page 971, "It is apparent that the judge who rendered the order and against whom the writ prayed for, if allowed, is to be directed, is the essential party respondent." *Ex Parte Indiana Transp.*

*Co.*, 242 U. S. 281, 37 Sup. Ct. 126. That it is the practice in this jurisdiction to make the court and judge respondents is evidenced by numerous instances in our reports.

Second, "Upon account of the acquiescence and laches of the petitioners, this court ought not to entertain this application." *People v. District Court*, 54 Colo. 576, 583, 131 Pac. 424. The foregoing holding was on a record showing a delay of only ten and one-half months. In the light of the procrastination evidenced by this record, August 26, 1929, to May 18, 1933, that case charts our course. In *People v. District Court*, 74 Colo. 40, 45, 218 Pac. 745, 746, reiterating what we have many times emphasized, that prohibition is not a writ of right, we said the writ "will not issue when the petitioner has failed to act with reasonable promptness." In that case, after saying, "If the trial court is acting without or in excess of its jurisdiction," and remarking that "relators delayed application for the writ for a full year after they, if ever, were entitled thereto and after the emergency, if any, arose," we denied the writ.

It is significant, we think: (1) That not until after the order had been made was objection offered to the appointment of a referee; (2) that neither below nor here is the fitness or fairness of the referee brought in question; and (3) that only to the referee, never to the court, was objection to the jurisdiction of the court interposed. Besides, if the jurisdiction of the court was to be challenged in prohibition, plaintiffs in error could have availed themselves of the time between August 26, 1929, when the referee was appointed, and October 9, 1929, the day to which the referee adjourned the hearing. To a court called upon to grant a writ that is not of right, these are important considerations.

Recalling the record, the dates and other circumstances, and mentioning the further fact that in the course of the hearing before the referee defendant in error expended in excess of $1,200 in a contest being waged by adversaries, who, whatever their belief as to

the jurisdiction of the referee and the court of his appointment, were proceeding as if yielding thereto, we feel that to prohibit the court from continuing to final judgment would be violative of the canons that should prompt a court of ultimate authority. Judge Herrick already has made it plain that he intends to call in another judge to consider the exceptions to the referee's report and to handle the case to its conclusion. Every point thought to be important can be raised before the trial court, to be presided over by that judge, and every ruling there may be challenged on review.

Let the order be that the petition for rehearing is denied.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE BOUCK dissent.